**Manuel Antonio PEREZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 1918, Docket 94–4226.**

United States Court of Appeals, Second Circuit.

Argued Aug. 10, 1995.

Decided Dec. 8, 1995.

deported to his native country, the Dominican Republic. Perez contends that the BIA's decision should be vacated and the matter remanded for new proceedings because the IJ at Perez's deportation proceedings improperly received in evidence two notices offered by respondent Immigration and Naturalization Service ("INS") relating to the termination of Perez's temporary resident status. Perez claims that the evidence was received in violation of the confidentiality provision of the Immigration Reform and Control Act ("IRCA"), codified at 8 U.S.C. § 1255a(c)(5). For the reasons set forth below, we dismiss Perez's petition.

. Bertrand G. Bosmans, Buffalo, NY (Stephen A. Rosenbaum, California Rural Legal Assistance Foundation, San Francisco, CA, of counsel), for Petitioner.

Diogenes P. Kekatos, Assistant United States Attorney, New York, NY (Mary Jo White, United States Attorney for the Southern District of New York, Steven M. Haber, Assistant United States Attorney, of counsel), for Respondent.

(Stephen A. Rosenbaum, California Rural Legal Assistance Foundation, San Francisco, CA, Robert A. Gibbs, Robert Pauw, Gibbs, Houston & Pauw, Seattle, WA, of counsel), for American Immigration Lawyers Association and National Immigration Project of the National Lawyers Guild as amici curiae.

Before MINER, WALKER and PARKER, Circuit Judges.

MINER, Circuit Judge:

Petitioner Manuel Antonio Perez Betances ("Perez") petitions this court for review of the November 4, 1994 decision of the Board of Immigration Appeals ("BIA") affirming the July 19, 1994 decision of the Immigration Judge ("IJ"), the IJ having found Perez subject to deportation and having ordered him

## BACKGROUND

In 1986, Congress enacted IRCA, which created a legalization program that "allow[ed] existing undocumented aliens to emerge from the shadows" and gain legal residency in the United States. *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 483, 111 S.Ct. 888, 891, 112 L.Ed.2d 1005 (1991). IRCA provided undocumented aliens who had resided continuously in the United States since January 1, 1982 with the opportunity to apply to the INS for legal resident status.[1] Fearing that participation in the program would be minimal due to the reluctance of illegal aliens to reveal their resident status to the government, Congress included a confidentiality provision in IRCA. H.R.Rep. No. 682(I), 99th Cong., 2d Sess. 72–73 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5676–77. This provision, in relevant part, states:

Neither the Attorney General, nor any other official or employee of the Department of Justice, or bureau or agency thereof [including the INS], may ... use the *information furnished pursuant to an application* filed under this section for any purpose other than to make a determination on the application or for enforcement

---

1. IRCA provided an adjustment of status to that of lawful temporary resident status for any alien who: (1) made a timely application; (2) had been a continuous unlawful resident of the United States since January 1, 1982; (3) had a continuous physical presence in the United States since November 6, 1986; and (4) was an admissible immigrant. 8 U.S.C. § 1255a(a). The timely application requirement was satisfied by applying for an adjustment to temporary resident status within one year of May 5, 1987. 8 C.F.R. § 245a.2(a)(1). If an alien was granted temporary resident status, he became eligible for an adjustment to permanent resident status. 8 U.S.C. § 1255a(b).

of [penalties for making false statements in the application process] or for the preparation of reports to Congress under section 404 of the Immigration Reform and Control Act of 1986....

8 U.S.C. § 1255a(c)(5)(A) (emphasis added). In addition, IRCA precludes the INS from making "any publication whereby the information furnished by any particular individual can be identified." 8 U.S.C. § 1255a(c)(5)(B).

On December 1, 1988, the INS approved Perez's application for temporary resident status. Under IRCA, an undocumented alien was required to apply for an adjustment to permanent resident status no later than forty-three months after being granted temporary resident status. 8 U.S.C. § 1255a(b)(1)(A). Perez never so applied.

In May of 1990, Perez was indicted in New York State Supreme Court, County of New York, on a number of drug trafficking counts, and, in April of 1991, he pleaded guilty to three felony drug charges. Perez was sentenced to an indeterminate term of one to three years of imprisonment and was incarcerated at a New York State correctional facility. As was common practice when aliens were imprisoned, officials at the correctional facility notified the INS that Perez had "been deposited at their facility." As a result, INS Special Agent William Stachowski went to the prison and interviewed Perez. Stachowski later testified at Perez's deportation hearing that, during the interview, Perez stated that he had entered the United States illegally through San Juan, Puerto Rico, without a passport or visa. At the interview, Stachowski completed a Record of Deportable Alien, Form I–213, dated February 25, 1993, which later was used at Perez's deportation proceedings as evidence of Perez's deportability.

During his incarceration, Perez received two notices (the "notices") from the INS. The first notice consisted of a letter from the INS dated April 8, 1993, informing Perez of its intent to terminate his temporary resident status pursuant to 8 C.F.R. § 245a.2(c)(1), which provides for the termination of temporary resident status of an alien who has been convicted of a felony. The notice indicated that Perez had thirty days to submit evidence to overcome the INS's grounds for termination of his temporary resident status. Perez failed to respond to this notice of intent. Thereafter, the INS sent Perez a second notice, dated June 21, 1993, informing him that his temporary resident status had been terminated.

Subsequently, the INS commenced deportation proceedings against Perez. By an Order to Show Cause dated September 16, 1993 and amended on June 29, 1994, Perez was charged with being subject to deportation pursuant to: (1) § 241(a)(1)(B) of the Immigration and Nationality Act ("INA"), for having entered the United States without inspection; (2) § 241(a)(2)(A)(iii) of the INA, for having been convicted of an aggravated felony; and (3) § 241(a)(2)(B)(i) of the INA, for having been convicted of a controlled substance offense.

On June 28, 1994, during the deportation proceedings, Perez denied all of the allegations contained in the Order to Show Cause, denied deportability as charged, and requested that the government demonstrate proof of its charges of deportability. In order to prove that Perez's temporary resident status had been terminated, the INS offered the notices in evidence.[2]

Perez objected to the offer of the notices, contending that the notices pertained to his application for temporary resident status and that to allow the INS to receive them in

---

**2.** In *Matter of Medrano*, Interim Decision No. 3138, 1990 WL 385765 (BIA Sept. 10, 1990), the BIA held that, as a condition precedent to the commencement of a deportation proceeding, the INS was required to terminate the temporary resident status of an alien who commits a deportable offense after acquiring temporary resident status.

However, this requirement has been eliminated by 8 C.F.R. § 245a.2(u)(2)(ii), which became effective on May 31, 1995. This section provides for the institution of deportation proceedings and the automatic termination of temporary resident status upon the entry of a final order of deportation in certain cases, including those where the basis for deportation is an aggravated felony conviction. *See* 8 U.S.C. § 1251(a)(2)(A)(iii) (providing for the deportation of convicted aggravated felons).

evidence would violate the confidentiality provision of IRCA. The INS, on the other hand, argued that the notices did not fall within IRCA's confidentiality provision, and therefore that its use of the notices to prove the termination of Perez's temporary resident status was permissible. The IJ reserved ruling on this issue and adjourned the hearing to July 19, 1994.

At the July 19 hearing, the IJ found that Perez should be deported to the Dominican Republic. In regard to the INS's use of the notices to prove the termination of Perez's temporary resident status, the IJ determined that the phrase "[i]nformation furnished pursuant to an application" in IRCA's confidentiality provision "includes any information which is supplied by the alien on the application form, any documentation the alien may submit in support of the application, and any information which is furnished on behalf of the applicant by any third party." [3] The IJ then found that the "disclosure of the fact of the termination of an applicant's temporary resident status does not constitute information within the meaning of that term as used in the [confidentiality provision]." Accordingly, the IJ concluded that the INS's use of the notices did not violate IRCA's confidentiality provision.

Perez appealed the IJ's decision to the BIA. The BIA affirmed the decision of the IJ, "based upon and for the reasons set forth in that decision." Perez petitions this court for review.

## DISCUSSION

■ At issue is whether the notices are covered by IRCA's confidentiality provision. The confidentiality provision states that the INS may not use "information furnished pursuant to an application" for temporary resident status for any purpose other than for: (1) making a determination on the application; (2) the enforcement of penalties for making false statements in the application process; and (3) reports to Congress. *See* 8

U.S.C. § 1255a(c)(5)(A). Congress intended the confidentiality provision to prevent the government from deporting an alien based on information obtained from the alien's application for temporary resident status. Congress noted that "legalization programs in other countries have usually produced a low rate of participation among the eligible candidates," and that part of the reason was a "distrust of authority and lack of understanding among the undocumented population." H.R.Rep. No. 682(I) at 73, 1986 U.S.C.C.A.N. at 5677. Therefore, Congress included the confidentiality provision in IRCA "to assure applicants that the legalization process [was] serious, and not a ruse to invite undocumented aliens to come forward only to be snared by the INS." *Id.*

■ In the present case, Perez argues that the notices are covered by IRCA's confidentiality provision because they contain his name and address, which he claims fall within the category of "information" under the confidentiality provision. We think that an alien's name and address, if furnished pursuant to an application for temporary resident status, may well be covered by the confidentiality provision. There is no better source of identity than name and address. The Tenth Circuit in *United States v. Hernandez,* 913 F.2d 1506 (10th Cir.1990), *cert. denied,* 499 U.S. 908, 111 S.Ct. 1111, 113 L.Ed.2d 220 (1991), recognized the importance of an alien's name when it held that

> the most important "information" provided in the context of an application for amnesty is the name of the applicant. . . . Given the importance which the INS places upon an applicant's identity, we cannot say that Congress sought only to protect information relating to applicants' "residence, work history, current employment, etc.," while leaving their names open to disclosure.

*Id.* at 1511 (citation omitted).

■ However, even if Perez's name and address can be categorized as "information"

---

3. Information furnished on behalf of an applicant by a third party presumably was included because IRCA provided aliens with the opportunity to tender their legalization applications either directly to the INS or to Qualified Designated Entities ("QDEs")—generally churches or organizations founded to address the needs of im-

migrants. *See* 8 U.S.C. § 1255a(c)(1), (2). The QDEs were intended to serve as buffers between aliens and the government by forwarding the aliens' applications to the INS. *Perales v. Thornburgh,* 967 F.2d 798, 801 (2d Cir.1992), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 3027, 125 L.Ed.2d 716 (1993).

under IRCA's confidentiality provision, they must have been "furnished pursuant to an application" for temporary resident status in order to be covered by the confidentiality provision. The confidentiality provision covers only "information furnished pursuant to an application," whether this information is furnished by an alien or by a third party on an alien's behalf. In the present case, the INS did not obtain Perez's name and address from Perez or from a third party on Perez's behalf. Instead, the INS obtained Perez's name and address from an independent source—New York State corrections officials. Based upon the corrections officials' communication, INS Special Agent Stachowski went to the prison, interviewed Perez, and discovered he was a deportable alien. Only after these events did Perez receive the notices containing his name and address.

It is clear that Perez's name and address, as they are used in the notices, were not furnished by Perez or by anyone on his behalf pursuant to his application for temporary resident status. It is also clear that the notices do not contain any other information that the INS could have obtained from Perez's application. The other information contained in the notices concerned Perez's drug conviction and the legal basis for the termination of his temporary resident status. This information either was generated by the INS or was obtained through Agent Stachowski's interview with Perez.

Because we find that neither Perez nor any third party acting upon his behalf furnished any information contained in the notices, the notices are not covered by IRCA's confidentiality provision. Accordingly, the notices were properly received in evidence at the deportation proceedings in relation to the termination of temporary resident status.

We have considered all of Perez's remaining arguments and find them to be without merit.

### CONCLUSION

In view of the foregoing, we dismiss Perez's petition for review.