In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4112

MOISES ARREOLA-ARELLANO,

Petitioner-Appellant,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent-Appellee.


Appeal from the Board of Immigration Appeals
No. A-91-887-063


Argued May 18, 2000--Decided August 3, 2000


  Before Posner, Diane P. Wood, and Williams, Circuit
Judges.

  Diane P. Wood, Circuit Judge. Moises Arreola-
Arellano, a 33 year old Mexican citizen, has been
residing illegally in the United States since
1985, with the exception of a single brief trip
back to Mexico in January of 1995. He applied for
legalization on October 10, 1988, but his
application was denied in 1991.

  On June 26, 1996, an Immigration and
Naturalization Service (INS) officer canvassed
the Palatine Park District in Palatine, Illinois,
where Arreola-Arellano worked. The INS officer
questioned Arreola-Arellano, recording notes from
the interview on an I-213 form ("Record of
Deportable Alien"). Those notes included
information from the materials that Arreola-
Arellano handed to the officer: a notice of
receipt of his legalization application, which
included the application's file number (A-91 887
063, identifiable as a legalization file from the
initial A-91); a Mexican certificate showing that
he was born in that country on May 5, 1967; a
1993 Illinois identification card; and a 1994
Illinois drivers license. That afternoon the INS
began deportation proceedings against Arreola-
Arellano. He conceded deportability at his
December 2, 1997 immigration hearing and asked
for a suspension of deportation based on family
circumstances. First the immigration judge, and
later the Board of Immigration Appeals (BIA),

denied that request and ordered him to be deported.

Later, Arreola-Arellano noticed that the file numbers of his legalization application and his deportation proceeding were the same. This prompted him to file a petition on July 11, 1999, asking the BIA to reopen his case. His theory was that the INS had violated the confidentiality provisions of the Immigration Reform and Control Act of 1987 (IRCA), in particular 8 U.S.C. sec.sec. 1160(b)(5), (6), and 1255a(c)(5), by using information from his 1988 legalization application to deport him. The BIA dismissed his petition to reopen; his appeal is from that decision.

We may overturn the BIA's decision only if we find that it abused its discretion. 8 C.F.R. sec. 3.2 (explaining that the decision to grant or deny a motion to reopen is within the discretion of the Board). The Board, moreover, has no right to reopen proceedings unless the petitioner provides new evidence that is material and was not available or discoverable at the time of the deportation hearing. 8 C.F.R. sec. 3.2.

The fact that the file numbers of Arreola-Arellano's deportation file and legalization file were the same could have been discovered by Arreola-Arellano at the time of the deportation hearing. He offers no rationale for not mentioning his confidentiality argument at that time. That fact alone strongly suggests that the BIA acted within the bounds of its discretion in refusing to reopen the case. Furthermore, the INS's apparent decision to use the same number could not have made any difference to the outcome of Arreola-Arellano's petition. The undisputed facts make it clear that whether or not INS deportation officials read Arreola-Arellano's legalization application in possible violation of the confidentiality rules, they did not use any information contained in that application to support the deportation order.

Arreola-Arellano filed for legalization under the IRCA, 8 U.S.C. sec. 1255a. That statute allows undocumented aliens who have resided continuously in the United States since January 1, 1982, to apply to the INS for legal resident status, despite the usual barrier of not having entered the United States legally. See H.R. Rep. No. 682(I), 99th Cong., 2d Sess. 59-61 (1986); Perez v. INS, 72 F.3d 256, 256 (2d Cir. 1995). The IRCA includes a confidentiality provision which is meant to assure people who wish to file for legalization will not be deterred from doing so by the prospect of attracting a troop of INS officers bent on deportation to their doors. See

H.R. Rep. No. 682(I) at 62. Officials may not "use the information furnished by the applicant pursuant to an application" for any purposes other than processing that application, enforcing penalties for false statements in the application, or fulfilling reporting requirements to Congress. 8 U.S.C. sec. 1255a(c)(5).

Arreola-Arellano argues that the file number identity indicates that the INS looked to his legalization application to determine that he was residing illegally in the United States, and that the INS used that information to deport him. An examination of the facts in chronological order proves this to be wrong. The INS officer responsible for initiating deportation proceedings against Arreola-Arellano encountered him before she knew about his legalization application. The officer was systematically questioning the workers of the Palatine Park District in the course of what the INS euphemistically terms a "workplace survey." Arreola-Arellano offers no reason at all to think that the targeting of the Palatine Park District had anything to do with his legalization application.

During his interview, Arreola-Arellano himself gave the immigration officer a card certifying his birth in Mexico in 1967. He also gave her a permanent residence address located in Mexico. Most significantly, Arreola-Arellano handed the officer an INS receipt for his legalization application. That receipt acknowledged Arreola-Arellano's application, and indicated that a hearing had been scheduled for February 8, 1989. On it was printed his A-91 file number. As explained at oral argument, A-91 numbers are only given to legalization applicants.

At the conclusion of the Palatine interview, based on information provided by Arreola-Arellano, the immigration officer had a strong suspicion that Arreola-Arellano was residing illegally in the United States. Unless Arreola-Arellano had been mistaken about his undocumented status when he filed for legalization, or his application had been granted and he had not received the corresponding papers, Arreola-Arellano was an illegal immigrant. That the INS initiated deportation proceedings is not puzzling. It did not do so based on information contained in Arreola-Arellano's application for legalization. Rather, it did so based, in part, on the fact that Arreola-Arellano had applied for legalization before 1989 and did not claim that his application had been accepted. The INS did check on Arreola-Arellano's legalization file to make sure that his application had not been granted before it proceeded to a deportation

hearing, but this prudent move did not violate the IRCA's confidentiality provision. (Indeed, we would perhaps be facing a different lawsuit if it had failed to check, and it turned out that the application had been granted.) Section 1255a(c)(5) does not bar anyone from reading an application or checking its final conclusion. Its only mandate is against the use of information retrieved from an application. Arreola-Arellano claims that the INS could not have proven deportability without using information from his application. But we need not speculate as to how the INS could have proven deportability, because Arreola-Arellano conceded that he was deportable at his deportation hearing.

The BIA acted within the bounds of its discretion in refusing to reopen Arreola-Arellano's case, and we therefore Affirm its decision.