**Bojana BEVC, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 94–1933.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1994.

Decided Feb. 17, 1995.

908

Y. Judd Azulay and Stephen D. Berman (argued), Azulay & Azulay, Chicago, IL, for petitioner.

Michael J. Shepard, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Div., Chicago, IL, Anthony W. Norwood (argued), David J. Kline, Dept. of Justice, Office of Immigration Litigation, Janet Reno, U.S. Atty. Gen., Office of the U.S. Atty. Gen., Washington, DC, A.D. Moyer, Samuel Der–Yeghiayan, Joseph M. Yeung, I.N.S., Chicago, IL, Richard M. Evans and William J. Howard, U.S. Dept. of Justice, Civ. Div., Immigration Litigation, Washington, DC, for respondent.

Before CUDAHY, EASTERBROOK and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

Bojana Bevc, a native of the former Yugoslavia, petitions the court to review the final order of deportation of the Board of Immigration Appeals (the Board), denying asylum and withholding of deportation.

## I. STATEMENT OF FACTS

Bevc was born in Macedonia, which was formerly part of Yugoslavia. She is a citizen of Macedonia and is of Macedonian descent. However, she moved to Serbia when she was still a child and she lived there until December 1991, when she entered the United States without inspection in Detroit, Michigan.

 Bevc's arrival in the United States followed that of her two children by only a few months. Somehow the children have secured permanent resident status in the United States. We find the record disturbingly sparse regarding the location of these children and what is to become of them if their mother is deported. Although Bevc's

former husband is also residing in the United States, we have no information regarding his residency status, with whom the children reside, who has custody of the children or whether or not the children will remain in the United States if their mother is deported. It is troubling that the children have disappeared through the cracks during this decision-making process. Unfortunately, however, while we are concerned about the unknown implications of this decision for the children, our decision must rest on the merits of Bevc's claim of a legitimate fear of persecution alone.[1]

During the initial deportation hearing, Bevc conceded deportability but applied for asylum and withholding of deportation, requesting voluntary departure in the alternative. As evidence of a well-founded fear of persecution, Bevc presented several newspaper articles and a State Department Advisory Opinion on conditions in the former Yugoslavia.[2] She was denied asylum and withholding of deportation, but granted voluntary departure. The Immigration Judge designated Yugoslavia as the place of deportation, in spite of Yugoslavia's vast transformation since Bevc's departure. When she left, Macedonia was still a part of Yugoslavia, but it has since been recognized as an independent state. The only remaining republics in Yugoslavia are Serbia and Montenegro.

The Board of Immigration Appeals dismissed Bevc's subsequent appeal on the grounds that Bevc failed to substantiate her fears of persecution. Although the Board's decision suggested that petitioner could be returned to *either* Serbia or Macedonia, the Board ultimately affirmed the Immigration Judge's deportation order which simply designated Yugoslavia as the country to which petitioner would be deported.

---

1. An alien parent cannot, in this situation, gain either favored immigration status or suspension of deportation based on her child's residential status. A parent has favored immigration status only when her child is a citizen and is over 21 years of age. 8 U.S.C. § 1151(b)(2)(A)(i) (1991). Also, hardship to the parent's child in deportation may only be considered in suspending deportation if the parent has been present in the United States for ten years. 8 U.S.C. § 1254(a)(2) (1991).

2. The State Department Advisory Opinion was based on various sources including United States Embassy reports and other reports from non-governmental organizations used in preparing the Department of State's annual *Country Reports on Human Rights Practices* and the annual *World Refugee Report*.

## II. ASYLUM AND WITHHOLDING OF DEPORTATION

█ Bevc argues that the Board erred in finding that she did not meet the requirements for asylum and withholding of deportation because the Immigration and Naturalization Service (INS) did not controvert any of the evidence she presented regarding persecution of non-Serbian people in Serbian territories. Bevc also argues that she was married to a Slovenian–Croatian, that she is of Macedonian descent and that these factors alone render her a marked and likely target of persecution in Serbia. She thus claims that, as a matter of law, the Board's determination should be reversed.

█ The standard for judicial review of the Board's decisions is an extremely demanding one. The alien seeking reversal must show that "the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias–Zacarias*, 502 U.S. 478, 478, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). The evidence must not only support reversal, but must compel it. *Id.* 502 U.S. at 481 n. 1, 112 S.Ct. at 815 n. 1. An applicant seeking asylum under Section 208(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1158(a), must show either that she has been a victim of persecution or that she has a well-founded fear of persecution. *Balazoski v. INS*, 932 F.2d 638, 640 (7th Cir.1991); *Carvajal–Munoz v. INS*, 743 F.2d 562, 576 (7th Cir.1984). She must show specific, detailed facts supporting the reasonableness of her fear that she will be singled out for persecution. *Sivaainkaran v. INS*, 972 F.2d 161, 163 (7th Cir.1992); *Zulbeari v. INS*, 963 F.2d 999, 1000 (7th Cir.1992). Bevc has failed to meet these standards.

We recognize that this may not be an ideal time for any non-Serbian to be living in Serbia. However, general conditions of unrest alone are insufficient to warrant relief. *Sivaainkaran*, 972 F.2d at 165 ("conditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum"). This is obviously the basis of Bevc's claim since she bases her claim on a State Department Advisory Opinion on conditions in Yugoslavia and newspaper articles discussing general conditions of unrest and persecution of non-Serbians in Serbia.

Bevc urges us to recognize that she is an especially likely target because the Serbian President has embarked on a campaign of ethnic cleansing against non-Serbians, and she is readily identifiable as a non-Serbian because of her Slovenian–Croatian name. Further, she claims that since she was a party to a mixed marriage, she is in a particularly dangerous position because she will be distrusted by extremists on all sides. However, the connection between these claims and Bevc's fear of being singled out for persecution is not so clear as to demand rejection of the Board's decision. The general evidence alone does not show that she personally is at great risk, and Bevc offered no other evidence to corroborate her fear of persecution. The facts here are certainly less compelling than those in *Zulbeari*, 963 F.2d 999, where petitioner had been personally interrogated and his house searched by authorities in his native country, or *Balazoski*, 932 F.2d 638, where Balazoski had been interrogated by authorities and his family and friends had been detained and questioned about him, and yet we denied asylum in both cases. Finally, although Bevc's argument focuses on her fears of returning to Serbia, she has been granted voluntary departure and, as the Board implies in its opinion, she may also return to Macedonia. (See discussion below on designation of country of deportation). As Bevc admits, the risks of returning to Macedonia are even less than those of returning to Serbia.

Thus, although the evidence Bevc presented may, to some degree, support a finding that she may be in danger if deported to Serbia, a reasonable factfinder in this case would not be compelled to find the requisite fear of persecution. We therefore affirm the Board's denial of asylum.

█ The Board's refusal to withhold deportation was also appropriate. The standard for withholding of deportation is even more stringent than the standard for granting asylum. *Balazoski*, 932 F.2d at 640. Applicants must show that there is a "clear

probability that they will face persecution in the country to which they will be deported." *Id.* Since Bevc's evidence has been deemed inadequate to justify granting asylum, the evidence also does not meet the stricter standard for withholding of deportation.

## III. REDESIGNATION

 While we affirm the Board's decision to deport, we are concerned with the lack of clarity regarding the place of deportation. The Board examined the merits of Bevc's case for return both to Serbia and Macedonia, implying that Bevc was free to return to either country. The Board recognized that Macedonia is a safer alternative for Bevc, and with this we agree. However, the Board affirmed the Immigration Judge's decision without explicitly changing the designation of Yugoslavia as the place of deportation. Thus, the Board's decision is internally inconsistent.

We are limited in our ability to clarify the designated country of deportation. Only the Attorney General has the authority to designate the country to which an alien will be deported. 8 U.S.C. § 1254A(b)(5); *Osmani v. INS,* 14 F.3d 13, 15 (7th Cir.1994). The authority to redesignate has also been delegated to the Board when the exercise of discretionary authority is appropriate for the disposition of a case. 8 C.F.R. § 3.1(d) (1993); *Ademi v. INS,* 31 F.3d 517, 521 (7th Cir.1994). Ordinarily, when an alien believes that the designated country of deportation is inappropriate, the proper course of action for the petitioner is to file a motion to reopen her case with the board. 8 C.F.R. § 3.2; *Demirovski v. INS,* 39 F.3d 177 (7th Cir. 1994). However, in this instance, the designation itself is not being challenged but clarification is being sought. It is unclear to us whether the Board was exercising its power to redesignate or merely reflecting its perception of the Immigration Judge's designation. We do not question the prudence of the Board's decision, but we are unsure precisely what that decision was.

Certainly, the determination where to deport an alien is not one that is casually made without regard for the alien's safety. While we believe that the Board's remarks are indicative of a thoughtful decision to redesignate Macedonia as the country of deportation, to assume this after the Board's explicit affirmation of the Immigration Judge's designation of Yugoslavia would be presumptuous. Consequently, we remand to the Board for clarification of the designated country of deportation.

For the reasons stated above, the Board's order denying asylum and withholding of deportation is affirmed, but we remand to the Board for clarification of the designated country of deportation.