70 F.3d 1274
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ammar Y. KISHTOW, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-2179.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 14, 1995.
Decided Nov. 27, 1995.
 
 Before CUMMINGS, BAUER and ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Ammar Kishtow is an Iraqi citizen who entered the United States legally with a visitor's visa. The Immigration and Naturalization Service ("INS") initiated deportation proceedings against him when he failed to leave this country after the visa expired. Although Kishtow conceded his deportability, he requested asylum and withholding of deportation. The immigration judge denied relief, concluding that Kishtow had not established a well-founded fear of persecution, but granted voluntary departure. The Board of Immigration Appeals affirmed the immigration judge's decision and Kishtow appeals. We affirm.
 
 
 2
 Kishtow is an Assyrian Christian who was born in Baghdad, Iraq in 1969. Although his family had moved to Kuwait shortly before his birth, his mother returned to Iraq to be with her parents during the birth in accordance with Iraqi custom. After three months, he and his mother rejoined the family. Kishtow lived in Kuwait until he was seventeen years old. In 1986, he and his family visited the United States. Although his parents returned to Kuwait, Kishtow stayed in Chicago. He finished his high school education and attended several junior colleges. Since then, Kishtow has remained in the United States with the exception of a two-day trip to Canada in January 1990 to see his parents who were attending a family function. His parents now reside in Canada. Kishtow claims that 37 other relatives have fled Iraq and have sought refuge in other countries for fear of persecution and that he has no more immediate family, including no first cousins, in Iraq.
 
 
 3
 Following his trip to Canada, Kishtow reentered this country on January 31 as a nonimmigrant visitor for pleasure and was authorized to remain here until July 30, 1990. When he failed to leave, the INS issued an order to show cause why he should not be deported pursuant to Sec. 241(a)(2) of the Immigration and Nationality Act. Kishtow claims that he has a well-founded fear of persecution should he return to Iraq based on religion, political opinion, and membership in a particular social group--his family.
 
 
 4
 Under section 208(a) of the Immigration and Naturalization Act ("the Act"), 8 U.S.C. Sec. 1158(a), the Attorney General may grant asylum in his discretion to any alien who qualifies as a refugee. A refugee is defined by statute as any person who is outside the country of his nationality and is unable or unwilling to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1101(a)(42). The Board of Immigration Appeals ("Board") found Kishtow to be statutorily ineligible for asylum under Sec. 1101(a)(42). The Board's decision is reviewed by this court under the substantial evidence test. Mitev v. INS, No. 94-2746, slip op. at 7 (7th Cir. Oct. 10, 1995). Accordingly, we will uphold the Board's factual findings if they are supported by reasonable, substantial, and probative evidence and will reverse only if the evidence is so "compelling that no reasonable factfinder could fail to find the requisite fear of persecution." 8 U.S.C. Sec. 1105a(a)(4); see also INS v. Elias-Zacarias, 502 U.S. 478, 484 (1992).
 
 
 5
 "Persecution" is defined in this circuit to mean the punishment or infliction of harm for political, religious, or other offensive reasons. Anton v. INS, 50 F.3d 469, 472 (7th Cir.1995). "[C]onditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum." Mitev, No. 94-2746, slip op. at 8 (quoting Sivaainkaran v. INS, 972 F.2d 161, 165 (7th Cir.1992). Rather the petitioner must present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution. Anton, 50 F.3d at 472.
 
 
 6
 Kishtow failed to carry his burden of proof. Iraq is governed by the Ba'ath Socialist Party in a one-party system dominated by Saddam Hussein. Iraq Human Rights Practices, 1994, Department of State Dispatch (March 1995). The population is ethnically mixed and also includes several religious groups, namely the Shi'a and Sunni Muslims (both Arab and Kurdish), Christians (including the Chaldeans and Assyrians), and Jews. Id. Kishtow claims that his father was persecuted by the Iraqi government because he was an active member of several Assyrian organizations and this was viewed by the ruling Ba'ath Party as an anti-Ba'ath political statement. According to the father's affidavit, "these clubs were formed as a self-help group for the Assyrian people so that the rights of the Assyrians would be safeguarded as much as possible. These groups also would allow us to express a unified political opinion." Admin.R. at 180.
 
 
 7
 The Board held that the evidence failed to demonstrate that the father's involvement in these organizations was viewed by the government as political in nature. Even assuming that the father's participation was political, there was no support for Kishtow's conclusion that these activities would be imputed to him. The Board's findings are reasonable and substantially supported by the record.
 
 
 8
 The only evidence of the father's persecution is his affidavit stating that he left Iraq over 25 years ago because he had been under surveillance by the Iraqi government and that "close friends who were active politically within the Assyrian movement were being arrested and some even disappeared never to be heard from [again]." Admin.R. at 181. Kishtow testified that his father had been repeatedly questioned and entreated to join the Ba'ath party. Notwithstanding the remoteness in time of these events to the present and the fact that Saddam Hussein was not yet in power in the 1960s (he first became president in 1979), there is nothing in the record to support Kishtow's fear of persecution based on his familial relationship with his father.
 
 
 9
 Kishtow also contends that he has a well-founded fear of persecution should he return to Iraq because of his membership in the Assyrian Christian Church, the American-Assyrian Association and the Assyrian Student Association here in Chicago. In an advisory opinion requested by the immigration judge from the Department of State's Bureau of Human Rights and Humanitarian Affairs ("Bureau"), see 8 C.F.R. Sec. 208.11, the Bureau acknowledged that the Assyrian community in Iraq is the Christian community that "continues to have the most trouble with the regime, primarily because of the separatist political opinion of some Iraqi Assyrians." Nonetheless, "Assyrians are not persecuted in Iraq merely because of their religion." Admin.R. at 169. The opinion continues:
 
 
 10
 As regards the Christian minorities in Iraq generally, we can say that Christians are not persecuted in Iraq solely because they are Christian.... As the Department of State 1990 human rights report for Iraq makes clear, Iraq is a totalitarian state with an abysmal human rights record. But at the same time the Ba'athist regime of Saddam Hussein is relentlessly secular and one which really does not care how its citizens worship or if indeed if they worship at all. What is carefully watched by the secret police, however, are signs of political dissidence being preached in the churches and mosques.
 
 
 11
 Admin.R. at 169-70. The Department of State maintained that there was no indication that the Assyrians were held responsible for Iraq's defeat in the Gulf War or for Iraq's present condition and that Christian minorities in Baghdad and the major cities outside Kurdistan "are not much worse off than their Muslim neighbors." The statement concluded by saying that it was understandable that Kishtow would not want to return to Iraq but that it was "less clear ... that he has established a well-founded fear of persecution because of his religion or political opinion."
 
 
 12
 During his testimony, Kishtow agreed with the Bureau's conclusion that Christian Assyrians are not targeted by the Iraqi government because of their religious beliefs but because of their political views. Admin.R. at 71. He claims that the groups in which he is involved all have the same objective, to voice their political opinions and to achieve political reform so that Assyrians may participate in the current political regime or obtain their own land and government. Admin.R. at 29-30. However, the record is devoid of any evidence indicating the extent of Kishtow's involvement in these organizations.
 
 
 13
 Moreover, although Kishtow submitted several articles detailing human rights violations in Iraq and provided copies of reports, flyers and other articles authored by several Assyrian groups protesting the Iraqi government's persecution of Assyrian churches and ethnic Assyrians in Iraq, none of this documentation mentions or is authored by the groups of which Kishtow is a member.[1] The most recent piece of evidence, other than a report from Amnesty International, dates back to 1985. Kishtow simply did not provide the immigration judge with specific facts detailing his political involvement or the Iraqi government's interest in him because of his political and/or religious views. See, e.g., Urukov v. INS, 55 F.3d 222, 229-30 (7th Cir.1995) (petitioner's arrest and one-day detention for his participation in a political rally and his low-level involvement in an illegal resistance movement were insufficient to establish a well-founded fear of future persecution based on political opinion); Bevc v. INS, 47 F.3d 907, 910 (7th Cir.1995) (Serbia's campaign of ethnic cleansing against non-Serbians did not demonstrate that petitioner, a non-Serbian, would be singled out for persecution and that she personally is at great risk). Although Kishtow feared that "the Iraqi government has or would be inclined to view him disfavorably," the immigration judge's conclusion that this fear was wholly speculative is reasonable and supported by the evidence, or lack thereof, in the record.
 
 
 14
 Finally, Kishtow fears persecution based on his failure to serve in the Iraqi military during the war against Iran and during the Persian Gulf War. A refugee as defined by statute, however, must not only establish a well-founded fear of persecution but that he will be singled out for persecution based on his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. Sec. 1101(a)(42). Kishtow is not entitled to refugee status because the Iraqi government would punish him because of his refusal to fight; instead, he must prove that he would be punished based on one of the five illegitimate grounds. Elias-Zacarias, 502 U.S. at 483.
 
 
 15
 In Elias-Zacarias, the petitioner, a native of Guatemala, requested asylum based on the guerrillas' repeated attempts to coerce him into military service. Id. at 479-80. The petitioner feared that if he joined them, the government would retaliate against him and his family. Id. The Supreme Court held that the record failed to show a political motive on the petitioner's part; in fact, the petitioner admitted that he refused to fight for the guerrillas because he feared retaliation from the government. Id. at 482. Moreover, even if the petitioner had established that his decision not to fight for the guerrillas was politically motivated, he still needed to prove that the guerrillas would persecute him because of that political opinion rather than his refusal to fight with them. Id. at 483. This he had not done.
 
 
 16
 As in Elias-Zacarias, there is nothing in the record to suggest that the Iraqi government would single Kishtow out for punishment because he refused to serve in the military based on his religion or political views. Cf. Canas-Segovia v. INS, 970 F.2d 599, 601 (9th Cir.1992) (generally applicable military conscription law did not provide motive to persecute Jehovah's Witnesses). See also Adhiyappa v. INS, 58 F.3d 261, 268 (6th Cir.1995) (Sri Lankan not entitled to asylum where threats from separatist terrorist organizations stemmed from his role as a government informant rather than his anti-separatist views); Zhang v. Slattery, 55 F.3d 732, 751-52 (2d Cir.1995) (Chinese citizen's fear of enforcement of his government's universally applied "one couple-one child" policy did not constitute fear of persecution on account of one of the factors identified in the statutory definition of refugee). In fact, the record supports the opposite conclusion. For example, in 1982 the Iraqi government placed a notice in an Arabic international daily newspaper ordering all deserters and absentees from the military service and who resided abroad to return to Iraq within two months or be sentenced to death. Admin.R. at 120. The government clearly intended to punish all men who refused to serve in the military regardless of the reason. Although two of Kishtow's cousins have been sentenced to death because of their refusal to serve in the military, there is no indication that they were singled out because of their religion, ethnicity, or political beliefs. Furthermore, as the immigration judge noted, Kishtow has not shown that he was ever summoned by the Iraqi government for service or that he ever will be required to serve.
 
 
 17
 The grounds for which asylum is available are extremely limited and Kishtow simply has not carried his burden of proof. Without doubt Iraq can be a dangerous place to live. The latest report on human rights practices in Iraq by the Department of State indicates that the government's record has not improved, and has worsened in several areas. Iraq Human Rights Practices, 1994, U.S. Department of State Dispatch (March 1995). Such abuses include mass executions of political opponents, widespread use of torture, extreme repression of ethnic groups, disappearances, denial of due process, and arbitrary detention. Id. For all practical purposes, Kishtow has never lived in Iraq and has no immediate family members who currently reside there. Nonetheless, immigration policy is to be formulated by Congress and that body has enacted restrictive asylum eligibility requirements. The Board's conclusions given the narrow confines of the asylum eligibility requirements are supported by reasonable, substantial, and probative evidence. Therefore the Board's decision denying the request for asylum must be affirmed.
 
 
 18
 Kishtow's request for withholding of deportation was also properly denied. To be eligible for withholding of deportation, Kishtow must establish that his "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. Sec. 1253(h)(1) (1988). Under this statute, Kishtow carries an even heavier burden of proof than as an applicant for asylum, having to show that he faces a clear probability of persecution in the future. INS v. Cardoza-Fonseca, 480 U.S. 421 (1987); Urukov, 55 F.3d at 230. His failure to establish a well-founded fear of future persecution under the asylum statute necessarily establishes his failure to prove a clear probability of persecution. Bevc, 47 F.3d at 911.
 
 
 19
 Because the Board's findings are supported by reasonable, probative, and substantial evidence, its decision denying asylum and withholding of deportation is AFFIRMED.
 
 
 
 [1]
 Although the record contains two articles from newspapers or newsletters published by the Assyrian Student Association, the articles were published in 1985 and therefore could not be from the organization of the same name that Kishtow was first forming in 1992. Admin.R. at 59