Miltcho GRAMATIKOV, Ivaylo
Gramatikov and Vesselin
Gramatikov, Petitioners,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 97–1453.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 1, 1997.

Decided Nov. 3, 1997.

Stanley J. Horn (argued), Horn & Villasu-so, Chicago, IL, for Petitioners.

Samuel Der–Yeghiayan, Immigration & Naturalization, Chicago, IL, Allen W. Hausman, David M. McConnell, Kristal A. Marlow, Department of Justice, Civil Division, Immigration Litigation, John C. Cunningham (argued), United States Department of Justice, Immigration Litigation, Washington, DC, for Respondent.

Before POSNER, Chief Judge, and ESCHBACH and COFFEY, Circuit Judges.

POSNER, Chief Judge.

A father and two sons, all illegal immigrants from Bulgaria, were denied asylum and have appealed. They claim to have been persecuted in Bulgaria because of their opposition to communism and to fear that if they return there they will again be persecuted because even though Bulgaria formally abandoned communism in 1989 along with the rest of the Soviet Union's European satellites, the "same people" are, according to the Gramatikovs, still in charge.

We do not understand the Gramatikovs to be arguing that the persecution they experienced in Bulgaria was so severe that they should be granted asylum even if they have no well-founded fear of persecution should they be returned to their country. *Bucur v. INS*, 109 F.3d 399, 404–05 (7th Cir.1997). The question whether their fear, even if genuine, is well founded is thus cru-

cial, and we write in an effort to stave off what is threatening to become an avalanche of groundless asylum appeals by citizens of the formerly communist nations, appeals that waste our time and the aliens' money. See, e.g., *Bereza v. INS,* 115 F.3d 468 (7th Cir. 1997); *Boykov v. INS,* 109 F.3d 413 (7th Cir.1997); *Nenadovic v. INS, .*108 F.3d 124 (7th Cir.1997); *Tzankov v. INS,* 107 F.3d 516 (7th Cir.1997); *Guentchev v. INS,* 77 F.3d 1036 (7th Cir.1996). Routinely in these cases the immigration service requests an evaluation by the State Department of the likelihood of persecution if asylum is denied. Routinely the State Department advises the service that the formerly communist nations, having abandoned communism, no longer persecute anticommunists; and having abandoned atheism along with the other tenets of communism, no longer persecute religious people either. The advice of the State Department is not binding, either on the service or on the courts; there is perennial concern that the Department softpedals human rights violations by countries that the United States wants to have good relations with. So the alien is free to try to rebut the Department's advice, and since the rules of evidence are not applied in proceedings before the INS, e.g., *Morgano v. Pilliod,* 299 F.2d 217, 219 (7th Cir.1962); *Villegas–Valenzuela v. INS,* 103 F.3d 805, 812 (9th Cir.1996); *Felzcerek v. INS,* 75 F.3d 112, 116 (2d Cir.1996); *Henry v. INS,* 74 F.3d 1, 6 (1st Cir.1996), he need not, in casting his net for helpful evidence, feel cabined by those rules.

But when aliens try to rebut the State Department with self-serving, unsubstantiated, uncorroborated evidence about current political conditions in a country they left years ago, they will not convince the INS, and will certainly not furnish grounds upon which a reviewing court can reverse the agency given the deference that we are obliged to give decisions of the Board of Immigration Appeals. *INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 483–84, 112 S.Ct. 812, 815 n. 1, 816–17, 117 L.Ed.2d 38 (1992); *Bereza v. INS, supra,* 115 F.3d at 472; *Bevc v. INS,* 47 F.3d 907, 910 (7th Cir.1995). Rules of evidence or not, no responsible administrative or judicial body is going to give weight to unsubstantiated testimony that the alien believes that the bad guys are still running things. An alien who has lived in this country for years and is not an expert on the politics of his native country will ordinarily have no credible basis for testifying about the secret power structure of that country. He had better be able to point to a highly credible independent source of expert knowledge if he wants to contradict the State Department's evaluation of the likelihood of his being persecuted if he is forced to return home, an evaluation to which courts inevitably give considerable weight (see, e.g., *Mitev v. INS,* 67 F.3d 1325, 1332 (7th Cir.1995); *Kaczmarczyk v. INS,* 933 F.2d 588, 594 (7th Cir.1991)), despite the concern we noted earlier about the Department's tendency to downplay human-rights violations by governments with which the United States wants to have friendly relations.

There is a *little* more here than just the Gramatikovs' self-serving and insufficiently grounded testimony about current political conditions in Bulgaria, but far too little to count. There is a 1993 report by Amnesty International that discusses an incident of police brutality in Bulgaria, and a 1992 newsletter that discusses the difficulties that ethnic and religious minorities are encountering in Bulgaria's "anything but smooth" transition to democracy. Neither report is current; neither bears on the Gramatikovs' claim that the communists are still running things and making life hard for anticommunists; neither has, in fact, the slightest probative value. In these circumstances, the filing of these petitions for review was an exercise in futility, and we hereby warn the immigration bar that lawyers who file petitions for review of denial of asylum that are as thin as this one will be courting sanctions. See Fed. R.App. P. 1, 38.

A<small>FFIRMED</small>.