**Dashamir SULO, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 03–1083.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 2004.

Decided Nov. 8, 2004.

254

Before BAUER, COFFEY, and EVANS, Circuit Judges.

ORDER

Dashamir Sulo, who is from Albania, petitions for review of the denial of his application for asylum, withholding of deportation, and relief under the Conven-

tion Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment based on past and likely future persecution by the Albanian Democratic Party. The immigration judge determined that Sulo was not credible, largely because an investigation conducted by the State Department concluded that several of his corroborating documents were invalid. The Board of Immigration Appeals affirmed the IJ's decision without opinion and subsequently denied Sulo's motion for reconsideration. Sulo now petitions for review of the BIA's summary affirmance of the IJ's denial of his asylum application. We deny the petition.

I.

Sulo is an Albanian national who came to the United States in 1996 on a visitor's visa. After overstaying his visa, he applied for political asylum in 1997. He is married and has no children; his wife was granted asylum in this country in 1998.

Sulo's claim for relief stems from multiple episodes of alleged persecution by the Democratic Party (DP). He testified that during the 1990s, he was an active member and local representative of the DP, which advocated the collapse of communism and a transition to political liberalism. But Sulo's relations with the DP began to sour in 1993, after he criticized the party's decision to oppose holding early elections. Secret service agents (whose political affiliation is unclear from the record) subsequently arrested and detained him for 18 days; during this time police officers beat the soles of his feet with clubs, and a DP official warned that if he spoke out again, his tongue would be cut off. Sulo was arrested again in April 1994, this time for criticizing what he referred to as the party's increasingly corrupt leader-

ship. He was taken to the capital city of Tirana, where for two months he was detained, underfed, and beaten, until his captors issued a "release order" and freed him. Then, in December 1995, Sulo was arrested a third time at a DP conference in Tirana for publicly challenging the party's proposal to amend Albania's electoral laws. This time, he was imprisoned for four days, and during his confinement he was questioned and beaten repeatedly with "police clubs." After his release, he recuperated for two weeks in a hospital, where he learned that the DP had stripped him of his party membership.

After leaving the hospital, Sulo met with DP officials, who again warned him not to criticize the party. He subsequently reapplied and was readmitted to the DP. Then, in January 1996, he was summoned before a local district court on charges of committing a "political attack on the President of the Republic." After consulting with his family, Sulo decided to flee Albania for the United States. Soon thereafter, his mother received an Albanian arrest warrant, which had been issued for him. The following year, allegedly in retaliation for his political activism, his brother was kidnapped and his mother was interrogated and beaten.

To corroborate his testimony regarding his alleged mistreatment, Sulo proffered a number of documents: two party membership certificates, the prison release order from 1994, and the summons and arrest warrant from 1996. However, Sulo was unable to authenticate the documents, so the IJ requested an "assessment" of their "reliability" by the State Department's Bureau of Democracy, Human Rights, and Labor. The U.S. embassy in Tirana conducted an investigation and concluded that two of the documents (the release order and arrest warrant) were not valid and that one (the summons) could not be veri-

fied but were suspect because "it is not a practice of the national government to issue a summons for 'political attack.'"

The IJ based his adverse ruling on a finding that Sulo was not credible—a finding that relied heavily on the State Department's conclusion rejecting the authenticity of several of Sulo's documents. The IJ observed that they bore none of the usual "trappings" of official documents, such as official letterhead or return addresses. The IJ also noted an inconsistency between Sulo's asylum application and testimony regarding the detention in which he was beaten on the soles of his feet, and several implausibilities that further cast doubt on his claim, such as the fact that Sulo presented two slightly different party identification certificates that were issued on the same day and by the same office, and his failure to explain why he continued to work for the DP after it had mistreated him. Because Sulo did not warrant asylum, the IJ rejected his remaining claims for withholding of deportation and relief under the Torture Convention.

## II.

Sulo challenges the IJ's adverse credibility finding, and specifically the IJ's reliance on the State Department's opinion pronouncing his documents invalid, claiming that the IJ's reliance on the department's letter denied him due process, and that substantial evidence did not support the IJ's finding that Sulo was not credible.

### A. State Department Letter and Due Process

Sulo asserts that he was wrongfully denied the opportunity to cross-examine the consular investigator who checked on the authenticity of his documents. Without being able to cross-examine the investigator, he claims, he was unable in any way to challenge the State Department's

conclusions, which ultimately doomed his claims. Other circuits have rejected the notion that asylum-seekers are entitled to cross-examine the authors of State Department reports that cast doubt on their claims. *Niam v. Ashcroft*, 354 F.3d 652, 658–59 (7th Cir.2004) ("the authors of these reports are anonymous and there is no opportunity for the asylum-seeker to cross-examine any of them"); *Gailius v. INS*, 147 F.3d 34, 46 n. 7 (1st Cir.1998). The First Circuit determined in *Gailius*, 147 F.3d at 46 n. 7, that the requirements of due process are satisfied if an alien is given an opportunity to rebut the State Department's findings by introducing evidence of his own. We agree with the First Circuit's approach to this issue, and conclude that Sulo's due process rights were not violated because he did have an opportunity to challenge the department's findings at his hearing.

Sulo also asserts generally that the use of the State Department letter at his hearing was "inherently unfair and violative of fundamental notions of due process." He argues that the letter should not have been considered because it is unreliable evidence—it came "from an unknown source" and its "veracity was not and could not be verified." Administrative agencies are not bound by the Federal Rules of Evidence, but the IJ's use of the State Department's letter at the hearing still must comply with the standard of due process, which requires that the evidence be probative and its use fundamentally fair. *See Niam*, 354 F.3d at 659; *Bustos–Torres v. INS*, 898 F.2d 1053, 1055 (5th Cir.1990). It is well-established that in all but the most extraordinary circumstances, State Department reports are admissible as evidence in asylum proceedings. *Niam*, 354 F.3d at 659; *see also Ezeagwuna v. Ashcroft*, 325 F.3d 396, 405–06 (3d Cir.2003). Sulo's due process claim therefore fails.

### B. State Department Letter and the Substantial Evidence Test

■ Sulo next argues that the State Department's letter does not provide substantial evidence for the IJ's credibility determination. Sulo challenges the State Department's conclusion that his documents were false, arguing that mere "conjecture" supports the department's characterization of the 1994 release order as invalid. He also challenges the department's conclusion about the arrest warrant and summons from 1996.

An IJ's factual findings, such as a credibility determination, enjoy highly deferential review under the substantial evidence test and should only be overturned under extraordinary circumstances. *Capric v. Ashcroft*, 355 F.3d 1075, 1086–87 (7th Cir. 2004). The State Department's conclusions—which provided the basis for the IJ's finding that Sulo was not credible—are not binding, but they will receive "considerable weight" if not rebutted by the asylum applicant. *Gramatikov v. INS*, 128 F.3d 619, 620 (7th Cir.1997).

The State Department's conclusions, which Sulo largely failed to rebut, provide substantial evidence for the IJ's credibility determination. The department determined that Sulo's 1996 arrest warrant was invalid because no record of it existed, and because the warrant's signatory had never been chief of police at the issuing police station. Sulo failed to rebut this conclusion. He argues that since all the police station's records were destroyed in 1997, the investigator could not be so sure, but given the short period of time between the issuance of the warrant in 1996 and the investigator's interview of a police station official in 1999, it is certainly conceivable that the official could recall whether the signatory had been the police chief at the station three years earlier. The State De-

partment also concluded that Sulo's 1994 release order must be invalid because courts, and not prisons, issue release orders in Albania. Sulo did not rebut this conclusion: he fails to explain why the release order, which bears a court's seal, has the caption, "Ministry of Interior Affairs, Director of Prisons." Sulo did address in part the State Department's doubts about the 1996 summons, but the department made no firm conclusions about that document, so this does not jeopardize the evidentiary value of the letter.

Other factors unrebutted by Sulo also support the IJ's finding that Sulo falsified his documents. As the IJ noted, the documents Sulo offered lacked official markings, such as return addresses and official stationary. Moreover, the State Department had previously noted the widespread use of fraudulent documents by Albanian asylum applicants. Sulo has not addressed these points. *See Capric*, 355 F.3d at 1086 (alien must provide a convincing explanation of discrepancies to be found credible). Thus, because Sulo submitted invalid corroborating documents, the IJ was permitted to determine that he was not credible.[1] *See Yongo v. INS*, 355 F.3d 27, 34 (1st Cir.2004) (ALJ is permitted to determine the significance of fraudulent documents on the applicant's overall credibility); *In re O–D–*, 21 I. & N. Dec. 1079, 1083 (BIA 1998).

Beyond the State Department's letter, the IJ also pointed to inconsistencies and implausibilities in Sulo's narrative that undermined his credibility. *See Ahmad v. INS*, 163 F.3d 457, 461–62 (7th Cir.1999) (multiple inconsistencies support a finding that applicant is not credible). Sulo cor-

rectly contends that not all of the bases articulated by the IJ demonstrate that he is incredible, but those noted above, coupled with the State Department letter, amount to substantial evidence supporting the decision to discredit Sulo.

Sulo makes one more argument. He claims that the IJ denied him due process of law by failing to advise him of his procedural rights at the immigration hearing, and specifically, the availability of voluntary departure under 8 C.F.R. § 1240.11(a)(2). Sulo waived this issue, however, by failing to raise it in his appeal to the BIA, and we therefore need not address it. *See Capric*, 355 F.3d at 1087.

## III.

For the foregoing reasons, we DENY Sulo's petition for review.

---

1. Our recent decision in *Kourski v. Ashcroft*, 355 F.3d 1038 (7th Cir.2004), held that it is not always proper to discredit an asylum applicant's entire testimony solely because he submitted false documents. But this case cannot help Sulo. In *Kourski*, we held that the submission of a fraudulent birth certificate could not be used to discredit an applicant who was unaware that the document was invalid. *Id.* at 1039. In this case, however, the IJ strongly implied that Sulo himself had falsified his corroborating documents.