**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 4, 2005
Decided September 16, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 02-3867

| | |
|---|---|
| ARTAN FETO,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals |
| *v.* | |
| ALBERTO R. GONZALES, Attorney<br>General of the United States,<br>    *Respondent*. | No. A74-875-517 |

**O R D E R**

Albaninan citizen Artan Feto applied for asylum and withholding of deportation, alleging that he faced persecution on account of his political beliefs. The Immigration Judge denied relief, finding that Feto's application and testimony were not sufficiently detailed to establish past persecution or a likelihood of future persecution and that Feto had not provided sufficient corroborating evidence to cure this lack of specificity.  Feto appealed, and the Board of Immigration Appeals affirmed the IJ's decision without opinion.  We deny Feto's petition for review.

The INS initiated deportation proceedings against Feto in 1996 based on his use of a fraudulent passport to enter the United States.  Feto conceded deportability but filed an application for asylum and withholding of deportation, stating that his "family has always been against the communist regime," and as a result his life

would be in danger should he be returned to Albania.  He stated that his maternal grandfather and seven of his cousins had been killed by the communists for their membership in the Balli Kombetar or National Front Party, a Western-oriented and anti-communist group that was formed in the 1940s.  Because of their affiliation with the NFP, Feto stated, his family was sent to an internment camp for six years when he was a child.  In addition, he asserted that his family was "always" threatened by the government.  For instance, they were not allowed to travel without permits and he was permitted only very limited schooling.  Although Feto recognized that the individuals in power in Albania had changed since his departure—indeed power was transferred to the Democratic Party in 1992 and then to the Socialists in 1997—he claimed that "their intentions are the same," and that "the socialist[s] have waited for this opportunity to get revenge on the people that opposed them when communism fell."

At a hearing in January 1998 Feto testified in support of his application.  He stated that members of his family had been involved in the NFP since the 1940s and he himself had joined in 1991.  Because of his family's involvement, Feto claimed, in 1967 his father had been imprisoned and all of his property was confiscated by the communists.  Feto recalled that when he was a boy between the ages of six and thirteen, he and his family were interned at a mountain camp.  In 1991, at the age of twenty, Feto was drafted into the Albanian army.  Three months later, he deserted from the army, however, after a high-ranking communist official overheard him and some friends discussing the democratic movement.  Fearing he would be charged with some unspecified crime, Feto fled to Greece, where he stayed for five years before moving to the United States, stopping briefly in Albania to pick up a forged passport.  He entered the United States through Newark, New Jersey in April 1996; two months later the INS concluded that his passport bore a false name and issued an Order to Show Cause.

The IJ questioned Feto extensively about his failure to provide any documentary support for his claims.  Feto stated that he had given his attorney unspecified "evidence" that he had been put in an internment camp, but his attorney responded that he had "no evidence that he was in a camp in [his] file." Feto further suggested that he had given his attorney documents demonstrating that his family had been charged with "action against communism"; his attorney admitted that "he might have given them to me," but added that he didn't "have them in [his] file."  As to his failure to produce documents supporting his membership in the NFP, Feto claimed that he had left behind unspecified "proof" of his party affiliation in Albania, where it was "kept in secrecy because the old regime was still in power at that time."

The IJ denied Feto's application, finding that his testimony and his "skeletal" application had established neither past persecution nor a well-founded fear of future persecution.  In making his determination, the IJ relied on a 1996 State

Department country report, which advised that although post-communist Albania struggles to recover from past institutionalized repression, citizens' claims that they will be "harassed because they espouse true democracy . . . generally lack substance." The IJ emphasized that Feto had not "submitted, nor . . . presented a reasonable explanation for the absence of, any documentation in support of his claim such as evidence of his family's alleged internment, his father's imprisonment, his uncle's membership in the Balli Kombetir, his uncle's death, or his own membership in the Balli Kombetir, nor did he attach letters or affidavits supporting his claim." He noted that Feto had "not presented any evidence to support his wide-sweeping assertion that the present day Albanian government is in essence a continuation of its Communist predecessor" or even "articulate[d] a specific reason as to why the current government would be inclined to persecute him in the future." He also observed that Feto had never actually been arrested, charged with an offense, or physically mistreated. Without detailed testimony or corroborating evidence of any of the alleged incidents of persecution, the IJ concluded, Feto had "not advanced . . . a persuasive claim."

Because the BIA adopted the IJ's reasoning without opinion, *see* 8 C.F.R. § 3.1(a)(7)(ii)(A)-(B), we review the IJ's decision, reversing only if the record lacks substantial evidence to support the IJ's factual conclusions. *Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir. 2003). The IJ's application of the governing legal standards is subject to de novo review. *Begzatowski v. INS*, 278 F.3d 665, 668 (7th Cir. 2002).

Feto's sole argument on appeal is that the IJ improperly applied the "corroboration rule" in deciding that his testimony was insufficient to meet his burden of proof. Feto contends that the absence of an explicit credibility finding obligates this court either to remand the case for clarification, *see Diallo v. INS*, 232 F.3d 279, 288, 290 (2d Cir. 2000), or to review the IJ's opinion under the assumption that Feto's testimony was credible, *see Lukwago v. Ashcroft*, 329 F.3d 157, 164 (3d Cir. 2003); *Ladha v. INS*, 215 F.3d 889, 901 (9th Cir. 2000).

After oral argument, the Justice Department submitted a strongly worded letter that troubles us in both content and tone. In this letter, the Department asserts that "[f]or the court to declare that [explicit credibility] determinations must be made would violate the settled principles of deference the Supreme Court has clearly laid down," stating that neither the BIA nor the Immigration and Nationality Act has imposed such a requirement. The irony of this statement could not be more apparent: It is precisely in the interest of ensuring proper deference that we have repeatedly encouraged immigration judges to make explicit credibility determinations. *See, e.g., Iao v. Gonzales*, 400 F.3d 530, 533-34 (7th Cir. 2005) (labeling the reluctance of immigration judges to make such determinations "disturbing," as "the reviewing court is left in the dark as to whether the judge thinks the asylum seeker failed to carry her burden of proof because her testimony

was not credible, or for some other reason"); *accord Gontcharova v. Ashcroft*, 384 F.3d 873, 877 (7th Cir. 2004); *Diallo v. Ashcroft*, 381 F.3d 687, 698 (7th Cir. 2004) ("the limits of our deferential standard of review are tested when we are asked to defer to findings of fact that the immigration judge has not made").

Despite our discomfort with the Justice Department's letter, a remand is not necessary in this case, as we find that Feto's testimony, even if taken as true, would not establish past persecution or the likelihood of future persecution. *See Medhin v. Ashcroft*, 350 F.3d 685, 690 (7th Cir. 2003) (affirming denial of asylum without analyzing the credibility of a petitioner's testimony, where the testimony would be legally insufficient even if true).

Although the INA does not define the term "persecution," we have held that it can include "non-life-threatening behavior such as torture and economic deprivation if the resulting conditions are sufficiently severe." *Capric v. Ashcroft*, 355 F.3d 1075, 1084 (7th Cir. 2004). To show a well-founded fear of future persecution, an applicant must establish that the fear is both subjectively genuine and supported by objective evidence. *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001).

Feto has not met this burden. Although he has alleged that his grandfather and cousins were executed and that various economic deprivations have been inflicted on his family because of their resistence to communism, Feto has never suggested that he himself was ever arrested, physically harmed, or even specifically threatened. In the absence of actual harm or the threat of harm, Feto's claim for asylum is doomed. *See Ahmed v. Ashcroft*, 348 F.3d 611, 615-616 (7th Cir. 2003). Although Feto did allege that he was placed in an internment camp as a child, his account of this event was vague and, given the significant lapse of time, would not give rise to an inference that Feto's fear of future persecution was reasonable. *See Krastev v. INS*, 101 F.3d 1213, 1217 (7th Cir. 1996).

Feto admits that he fled Albania not because he had been charged with a crime but because he feared he might be, and offers in support of his fear-of-future-persecution claim only his own speculation that Albania's new government is also hostile to his political beliefs. Feto's subjective belief that "the bad guys are still running things" is plainly insufficient to warrant the grant of asylum, *Gramatikov v. INS*, 128 F.3d 619, 620 (7th Cir. 1997), especially given the international media's report that power has in fact changed hands twice since Feto left Albania in 1991, BBC News, *Timeline: Albania, at* http://news.bbc.co.uk/1/hi/world/europe/country_profiles/1004984.stm. The current socialist regime gained power in 1997, at which point the State Department in its country report for Albania noted that "there is no post-Communist tradition of retribution against political leaders and few instances thereof." U.S. Dep't of State, COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES 1997 (Feb. 1998), *quoted in*

*Hasalla v. Ashcroft*, 367 F.3d 799, 804 (8th Cir. 2004) (denying petition for review of denial of asylum based on changed country conditions). That report went on to state that "Albanians who fled the country during the Communist dictatorship are welcomed back with citizenship restored and without adverse consequences, as are all Albanians who left at any time after the Communist regime fell." *Id.* And the most recent State Department country report for Albania makes clear that the current regime has "generally respected the human rights of its citizens" and that "[t]here were no confirmed cases of detainees held strictly for political reasons." U.S. Dep't of State, *Country Reports on Human Rights Practices 2004* (Feb. 2005); *see also Mullai v. Ashcroft,* 385 F.3d 635, 639 (6th Cir. 2004) (noting that, although there is evidence of "general civil disorder and lawlessness" in modern-day Albania, there is little likelihood of political persecution). These State Department reports are entitled to "considerable weight," *Gramatikov*, 128 F.3d at 620, and they demonstrate that Feto's fears of future persecution, though perhaps subjectively genuine, are not objectively reasonable.

Accordingly, we DENY petition for review.