**Bharat BHATT, Petitioner,**

v.

**Janet RENO, Attorney General of the United States, and Brian Perryman, District Director of the Immigration and Naturalization Service, Respondent.**

No. 98–2730.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 27, 1999.

Decided March 30, 1999.

Harold D. Block (argued), Milwaukee, WI, for Petitioner.

William J. Howard (argued), David J. Kline, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before ESCHBACH, FLAUM and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Bharat Bhatt, a Hindu and a native and citizen of India, seeks review of the decision of the Board of Immigration Appeals ("BIA") denying his application for asylum. Bhatt contends that the BIA lacked substantial evidence for its decision because it failed to properly credit evidence that he had suffered persecution on account of his religion and that he fears retaliation from Hindu radicals on account of his aid to Moslems during the 1992–93 riots in India. We deny Bhatt's petition for review and affirm the decision of the BIA.

## I.

Bharat Bhatt, a 34–year old Hindu male, is a native and citizen of India. His parents reside in India. He resides with his wife of nearly four years in Racine, Wisconsin. Bhatt grew up in the Indian state of Gujarat. In 1984, he moved to Bombay in the central-southwestern Indian state of Maharashtra, where he worked in a small store which sold sundries such as spices, cigars, and soap. In 1988, Bhatt purchased the store from his employer and took up residence in the living area above it. The store was located in a predomi-

nantly Moslem area of Bombay known as Jogesnwardi.

In December 1992, a group of radical and militant Hindus attacked and destroyed a Moslem mosque located at Ayodhya, a town in the northern Indian state of Uttar Pradesh. The attack incited riots between Hindus and Moslems in many areas throughout India, including Jogesnwardi. Bhatt claims that throughout the two-month riot period he aided the Moslems in Jogesnwardi by selling to them during the breaks in the curfews.

When people in the area discovered that he was selling to Moslems, Bhatt alleges that he was beaten several times, that Hindus protested publicly in front of his store, and that threats were issued to him. He suspects Hindus as being the ones who broke into and ransacked his store. Although he cannot name his assailants, Bhatt testified that he believes them to be members of radical Hindu militant groups, likely members of the Shiv Sena (Army of Shiva) and the nationalist Bharatiya Janata Party ("BJP"). Bhatt testified that in February 1993 he complained of these events to the police, who assured him that they would monitor the situation. However, Bhatt believes that they did nothing.

Bhatt states that in March 1993, he became frightened when he learned that certain unknown individuals were inquiring about his whereabouts. He testified that he left his home and store for a few months and fled to his parents' farm in the state of Gujarat. Bhatt related that while he was there additional unnamed persons came several times to inquire as to his whereabouts, and warned his parents that he should not continue his activities.

Bhatt testified that after returning to Jogesnwardi in May 1993, he was solicited for funds by representatives from radical Hindu political parties and on one occasion was beaten by someone wielding a stick. Eventually, he decided that his situation was too dangerous for him to remain in India. On December 24, 1993, he left Bombay and flew to Paris. From there,

he flew to the island of St. Martin, where he stayed for a few months. Still feeling unsafe, however, he sought the aid of a fellow Indian traveler who helped him to arrange passage to the United States. Bhatt then traveled by boat to St. Croix, from where he flew to San Juan, Puerto Rico.

In January 1994, Bhatt was detained by the Immigration and Naturalization Service ("INS") when he attempted to enter the United States at the airport at San Juan, Puerto Rico. He had neither a passport nor a visa to enter the United States. After the INS issued him an Order to Show Cause, Bhatt admitted the allegations in it and conceded deportability. On February 11, 1994, he was released from INS custody on bond to his foster brother, Bhupendra R. Patel of Racine, Wisconsin. Bhatt testified that except for sending his parents money through friends traveling to India, he has not communicated with family members in India since he left the country.

After a change of venue from Puerto Rico to Chicago, Bhatt applied for asylum in January 1995. In his application, he alleged that he was a victim of religious persecution on the basis of his interaction with the Moslems in Jogesnwardi in the aftermath of the Ayodhya incident. He also sought withholding of deportation. In July 1995, Immigration Judge Elizabeth A. Hacker ("IJ") conducted a deportation hearing to address the merits of Bhatt's application.

Prior to the hearing, the INS sought the Department of State's opinion as to the likelihood of Bhatt being persecuted if he were denied asylum. In response, the Department of State submitted a short opinion, advising that since India's population is 80% Hindu, Bhatt "should have no difficulty locating a safe and secure home in India." It also attached an earlier February 1995 report which analyzed the conditions in India as they related to asylum claims.

The IJ determined that Bhatt's deportability had been established by "clear, convincing, and unequivocal evidence." She concluded that Bhatt had "failed to introduce any concrete or direct evidence" that his fear of persecution was well-founded and that Bhatt's testimony lacked detail and was inconsistent with his written statements. She also found that Bhatt provided no credible indication that he had been harmed. The IJ ordered Bhatt to either depart to India voluntarily within 30 days of the decision or be deported there.

The BIA dismissed Bhatt's appeal of the IJ's decision. It concluded that because Bhatt lacked evidence to corroborate his claims of past or future persecution, he failed to meet his burden of proof. The BIA observed that the advisory opinion submitted by the Department of State regarding Bhatt's application "clearly contradict[ed]" his claims. Additionally, it concurred with the Department of State's position that internal resettlement of another area of India was an "obvious solution" for Bhatt to avoid contact with the Shiv Sena.

## II.

■ Bhatt contends on appeal that the Board's decision is not supported by substantial evidence. He asserts that his experiences in India during and after the 1992 riots establish his fear of future persecution should he return. He maintains that the evidence which he submitted to support his claims for asylum was sufficient to meet his burden of proof. Further, he argues that the BIA erred in relying on the advisory submission from the Department of State.

■ We use the substantial evidence standard to review the BIA's decision. We will uphold a decision of the BIA if the record "considered as a whole" supports it with "reasonable, substantial, and probative evidence." *Tzankov v. INS,* 107 F.3d 516, 519 (7th Cir.1997); *Angoucheva v. INS,* 106 F.3d 781, 788 (7th Cir.1997). See

8 U.S.C. § 1229a(c)(3)(A). This standard is "highly deferential" to the BIA because of the "fact-intensive nature of [deportation] inquiries and the superior expertise of the agencies that administer our immigration law." *Mitev v. INS,* 67 F.3d 1325, 1331 (7th Cir.1995) (citation and internal quotation omitted).

■ In order to be considered for asylum in the United States, Bhatt must demonstrate that he is a refugee. A refugee is any person outside his native country who is "unable or unwilling" to return to that country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A). Although there is no statutory definition of "persecution," we have described it as "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." *Mitev,* 67 F.3d at 1330; *Draganova v. INS,* 82 F.3d 716, 720 (7th Cir.1996). The alleged persecution "need not necessarily threaten the petitioner's life or freedom"; however, it must rise above the level of "mere harassment." *Borca v. INS,* 77 F.3d 210, 214 (7th Cir.1996) (quotations and citation omitted). Therefore, to establish that he has a well-founded fear of persecution, Bhatt must show that his fear of being singled out for future persecution is subjectively genuine *and* that there is objective evidence to justify his fear. See *Najafi v. INS,* 104 F.3d 943, 947 (7th Cir. 1997); *Mitev,* 67 F.3d 1325, 1331; *Sivaainkaran v. INS,* 972 F.2d 161, 163 (7th Cir. 1992).

Bhatt maintains that he fears returning to India because he was persecuted in the past by Hindu radicals for his aid to Moslems. He argues that because the IJ did not specifically discredit his testimony of maltreatment by Hindu radicals, it requires no corroboration, constitutes sufficient evidence of persecution, and establishes his status as a refugee. He also contends that it is unsafe for him to return

to India because he will not be able to escape the radicals who have been seeking his whereabouts. Noting that since 1996 India has been ruled by the BJP, a party with ties to Hindu radicals, he argues that the network of Hindu radicals has been strengthened and these radicals would now be able to readily locate, injure, and even kill him, regardless of where he was in India.

Bhatt must show "specific, detailed facts supporting the reasonableness of [his] fear that [he] will be singled out for persecution." *Bevc v. INS*, 47 F.3d 907, 910 (7th Cir.1995); *see also Krastev v. INS*, 101 F.3d 1213, 1216, 1218 (7th Cir. 1996). However, Bhatt's testimony of the threats and harm he says he received from radical Hindus is too vague, speculative, and insubstantial to establish either past or future persecution. Bhatt acknowledges that he was never tortured, arrested, or detained by Hindu militants or by the police. *See Mitev*, 67 F.3d at 1330. Beyond his own allegations and testimony that he was beaten on several occasions by Hindus, the record contains no evidence corroborating the beatings or describing the severity of his injuries. We continue to recognize "the hard truth that unpleasant and even dangerous conditions do not necessarily rise to the level of persecution." *Id* at 1331. We cannot agree with Bhatt that, in the absence of evidence, "common sense" is sufficient proof that he was injured in the attacks.

Furthermore, Bhatt presents very limited evidence that radical Hindus threatened him. In support of his claim, he presents an affidavit from Vinodbhai Patel, a store-owner who operated a sales stall near his in Jogesnwardi, asserting that he overheard "a member of one of the militant Hindu groups" warn Bhatt by saying that he would "soon suffer" as a result of his assistance to Moslems. Although Patel's affidavit alludes generally to some vague threat of possible harm years ago, it lacks specific details buttressing why Bhatt would be likely to fear any persecution were he to return to India.

As further support for his future persecution claim, Bhatt also notes that his parents have been contacted as to his whereabouts. He points to an affidavit submitted by Bhupendra Patel, his foster brother in Wisconsin, who stated that during a recent visit to India, family members and unidentified acquaintances told him that militant Hindus had inquired about Bhatt's whereabouts. But there is no evidence in the record that any of Bhatt's family members have been harmed while Bhatt has resided in the United States. The absence of such evidence undermines his claim to have a well-founded fear of persecution. *Lwin v. INS*, 144 F.3d 505, 509 (7th Cir.1998).

Finally, Bhatt objects generally to the Department of State's submission and the BIA's reliance on it. He complains that such information was nothing more than a "boiler-plate document" containing "conclusions which run counter to facts" the Department of State has described in other reports. Further, he takes issue with the BIA's concurrence with the Department of State's conclusion that internal resettlement in India is an obvious and viable solution for Bhatt. Again, his claims are defeated by his lack of evidence. The evidence which Bhatt offers neither substantiates this allegation of anticipated harm nor rebuts the Department of State's conclusion that he can avoid encounters with potentially hostile Hindu radicals if he were returned to a different part of India.

As an alternative to asylum, Bhatt seeks a withholding from his deportation. Because Bhatt has not met his burden of demonstrating a well-founded fear of persecution, he cannot establish the more stringent requirements for withholding of deportation. *Boykov v. INS*, 109 F.3d 413, 418 (7th Cir.1997).

The BIA's decision is hereby AFFIRMED and the petition for review is DENIED.