In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 02-1744

KHADIJE ALI AWAD,

*Petitioner,*

*v.*

JOHN ASHCROFT,
ATTORNEY GENERAL,

*Respondent.*

---

Petition for Review of an Order
of the Board of Immigration Appeals
No. A72-670-611

---

ARGUED JANUARY 7, 2003—DECIDED MAY 2, 2003

---

Before COFFEY, ROVNER, and EVANS, *Circuit Judges.*

COFFEY, *Circuit Judge.* Petitioner Khadije Awad,[1] a 50-year-old Lebanese national, entered the United States as a nonimmigrant visitor on March 1, 1988, with permission to remain until August 31, 1988. In August 1993, follow-

---

[1] We note that the Petitioner had named the Immigration and Naturalization Service ("INS") as a respondent in this action. Under the judicial review provisions of § 242 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1252(b)(3)(A) (2000), the Attorney General of the United States, not the INS, is the proper respondent.

ing the expiration of her visa, Awad filed an application
for political asylum claiming that she was subjected to
persecution in Lebanon from a "criminal government," non-
Lebanese forces, politically motivated killings, and also
claimed that in Lebanon her family was mistreated because
she had married a Jordanian citizen.[2] The INS issued a
Notice of Intent to Deny her application in February
1994, and followed with an Order to Show Cause on
November 22, 1994. In May 1995, Awad married a United
States citizen, Nabil Azo. Two days later, Awad filed a new
application for asylum as well as an application for suspen-
sion of deportation, but Awad withdrew both applications
in November 1995, believing that she could adjust her INS
status through her marriage. In January 1996, INS ap-
proved her husband's alien relative visa petition naming
Awad as the beneficiary. Before Awad's status was ad-
justed, however, the petition was nullified by an interven-
ing divorce that June.

Awad moved to reopen her suspension of deportation
application before the immigration judge ("IJ") on Septem-
ber 30, 1996, the same day that the Illegal Immigra-
tion Reform and Immigrant Responsibility Act of 1996
("IIRIRA") was signed into law. The IJ denied Awad's
motion in November on the grounds that Awad was ineligi-
ble for relief because she had not accumulated the neces-
sary seven years of continuous physical presence in the
United States prior to the issuance of the November 1994,
Order to Show Cause.[3] Awad appealed to the Board of

---

[2]  After following her husband to the United States, Awad and her
husband divorced.

[3]  At the time that Awad applied for suspension of deportation,
8 U.S.C. § 1254 was the governing statute. Section 1254(a) gave
the Attorney General the discretionary power to suspend deporta-
tion of an alien who "has been physically present in the United

(continued...)

Immigration Appeals ("BIA"). In her brief to the BIA, Awad
argued that she had met the seven-year continuous phys-
ical presence requirement, but the BIA upheld the IJ's
decision on September 25, 2001.[4] Awad's motion to recon-
sider and remand her previously withdrawn claim for
asylum based on changed country conditions was also
denied by the BIA on March 1, 2002.[5] Awad now asks this
Court to reverse the decision of the BIA and grant her
motion to reconsider and remand on three grounds: (1) the
BIA abused its discretion in denying Awad's appeal of
the IJ's decision because the IJ incorrectly applied the
"stop time" rule;[6] (2) the BIA abused its discretion in

---

[3] (...continued)
States for a continuous period of not less than seven years
immediately preceding the date of such application, and proves
that during all of such period he was and is a person of good moral
character; and is a person whose deportation would, in the opinion
of the Attorney General, result in extreme hardship to the alien
or to his spouse, parent, or child, who is a citizen of the United
States or an alien lawfully admitted for permanent residence."
8 U.S.C. § 1254(a)(1) (1995).

[4] Awad remarried Nabil Azo before her appeal to the BIA and
he filed a new alien relative visa petition again naming Awad
as the beneficiary. Nonetheless, the BIA refused to adjust Awad's
INS status based upon her marriage because, at the time of the
BIA's decision, Awad's visa petition had yet to be approved. Awad
subsequently divorced Nabil Azo a second time.

[5] Despite the fact that the IJ had never ruled on Awad's asylum
application, the BIA construed Awad's motion to reconsider and
remand as a motion to reopen her claim for asylum and then
concluded that Awad had not presented a prima facie case that
she would be subject to persecution upon returning to Lebanon.
Accordingly, the BIA denied Awad's motion.

[6] The so called "stop time" rule was created by IIRIRA. According
to the rule, the period of time to be counted towards the determi-
(continued...)

denying Awad's motion to reconsider and remand her application for asylum; and (3) Awad was denied due process of law because her claim for asylum was never heard.

The INS initiated deportation proceedings against Awad with the November 22, 1994, Order to Show Cause, issued over two years before IIRIRA effectively amended the Immigration and Nationality Act ("INA"). Nonetheless, section 309(c) of IIRIRA contains various transitional rules that were implemented immediately upon enactment on September 30, 1996. *Codified at* 8 U.S.C. § 1101 nt. In the case at hand the non-superceded sections of the INA along with IIRIRA's transitional rules apply. *Useinovic v. INS*, 313 F.3d 1025, 1030 (7th Cir. 2002).

Awad's claim that the IJ incorrectly interpreted the stop time rule is without merit. Under § 309(c)(4)(C) of IIRIRA, a petition for judicial review by this Court must be filed within 30 days of the date of the final order of deportation. *Codified at* 8 U.S.C. § 1101 nt. Awad never appealed the BIA's September, 2001, decision addressing the IJ's application of the stop time rule. Likewise, Awad failed to present the stop time issue to the BIA in her motion to reconsider and remand her application for

---

[6] (...continued)
nation of whether an individual has met the continuous physical presence in the United States requirement to qualify for a suspension of deportation will end when the alien is served with a Notice to Appear from the Attorney General. 8 U.S.C. § 1229b(d)(1). Section 203(a)(1) of the Nicaraguan Adjustment and Central American Relief Act further states that the stop time rule applies to Orders to Show Cause issued before, on, or after the date of IIRIRA's enactment. *Codified at* 8 U.S.C. § 1101 nt. The retroactive application of the stop time rule has sustained a challenge in this Court. *Angel-Ramos v. Reno*, 227 F.3d 942, 947-48 (7th Cir. 2000).

asylum. Because Awad failed to raise the stop time issue in her motion to reconsider, she disregarded the statutory requirement that she exhaust all administrative remedies before seeking this Court's review of the INS decision.[7] 8 U.S.C. § 1105a(c) (1995); *Useinovic*, 313 F.3d at 1035; *Toptchev v. INS*, 295 F.3d 714, 721 (7th Cir. 2002); *Sing v. Reno*, 182 F.3d 504, 511 (7th Cir. 1999); *Castaneda-Suarez v. INS*, 993 F.2d 142, 144-45 (7th Cir. 1993). Although the alleged misapplication of the stop time rule could have been addressed by the BIA had it been brought to the BIA's attention in the motion to reconsider, it was not. *See Toptchev*, 295 F.3d at 721. The exhaustion requirement is jurisdictional; thus, we lack jurisdiction to consider whether the IJ correctly interpreted the stop time rule. *Useinovic*, 313 F.3d at 1035; *Toptchev*, 295 F.3d at 721; *Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir. 1998); *Perez-Rodriguez v. INS,* 3 F.3d 1074, 1081 (7th Cir. 1993).

Awad's second argument, that the BIA abused its discretion in denying Awad's motion to reconsider and remand her application for asylum, also fails. Because Awad submitted new evidence in support of her motion to recon-

---

[7] Awad incorrectly asserts that the Ninth and Eleventh Circuits hold that a motion to reopen renders the BIA's decision non-final, and therefore non-appealable. Awad cites three cases in support of her proposition. *Fleary v. INS*, 950 F.2d 711 (11th Cir. 1992); *Chu v. INS*, 875 F.2d 777 (9th Cir. 1989); *Hyun Joon Chung v. INS*, 720 F.2d 1471 (9th Cir. 1983). Not only has this Court expressly disagreed with these decisions, *Rhoa-Zamora v. INS*, 971 F.2d 26, 32-33 (7th Cir. 1992); *Akrap v. INS*, 966 F.2d 267, 271 (7th Cir. 1992), but the Ninth Circuit cases were superceded in 1990 by § 106(a)(6) of the INA, *codified at* 8 U.S.C. § 1105a(a)(6) (repealed 1996) (stating that a review of a motion to reopen or reconsider a BIA order shall be consolidated with the review of the order), and all three decisions were overruled. *Stone v. INS*, 514 U.S. 386, 392, 397-98 (1995); *Pablo v. INS*, 72 F.3d 110, 112-13 (9th Cir. 1995).

sider—a State Department report on human rights in Lebanon—the BIA construed the motion as a motion to reopen, pursuant to 8 C.F.R. § 3.2. The BIA concluded that Awad failed to establish a prima facie case that she was eligible for asylum and the BIA's decision whether to grant a motion to reopen is discretionary. § 3.2(a). Accordingly, we will review the BIA's denial of Awad's motion to reopen for an abuse of discretion. *Krougliak v. INS*, 289 F.3d 457, 460 (7th Cir. 2002); *Arreola-Arellano v. INS*, 223 F.3d 653, 655 (7th Cir. 2000); *Tittjung v. Reno*, 199 F.3d 393, 396 (7th Cir. 2000); *Conti v. INS*, 780 F.2d 698, 701 (7th Cir. 1985); *Diaz-Salazar v. INS*, 700 F.2d 1156, 1159 (7th Cir. 1983). We review the BIA's determinations under a "highly deferential version of the substantial evidence test, which requires us to affirm if the Board's decision to deny asylum is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Karapetian v. INS*, 162 F.3d 933, 936 (7th Cir. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). The BIA's findings will be rejected only if the evidence is "'so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" *Karapetian*, 162 F.3d at 936 (quoting *Elias-Zacarias*, 502 U.S. at 483-84). Moreover, the BIA's denial of Awad's motion to reopen "will be upheld 'unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Mansour v. INS*, 230 F.3d 902, 907 (7th Cir. 2000) (quoting *Wijeratne v. INS*, 961 F.2d 1344, 1348 (7th Cir. 1992)); *accord Guan v. INS*, 49 F.3d 1259, 1261 (7th Cir. 1995); *Achacoso-Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir. 1985). "The BIA can deny a motion to reopen on any of the following three independent grounds: (1) 'failure to establish a prima facie case for the underlying relief sought'; (2) 'failure to introduce previously unavailable, material evidence'; and (3) 'a determination that even if

these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought.'" *Mansour*, 230 F.3d at 907 (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)); *accord INS v. Abudu*, 485 U.S. 94, 104-05 (1988).

The BIA found that Awad had failed to establish a prima facie case that she was eligible for asylum. To establish eligibility for asylum, Awad needed to demonstrate that she was a "refugee" as defined by 8 U.S.C. § 1101(a)(42)(A). "Refugees" are people who are unable or unwilling to return to the country of their nationality because of "a well-founded fear of persecution[8] on account of race, religion, nationality, membership in a particular social group, or political opinion." § 1101(a)(42)(A); *accord Sharif v. INS*, 87 F.3d 932, 935 (7th Cir. 1996). An applicant for asylum must demonstrate that her fear of persecution is both subjectively genuine and objectively reasonable. *Bhatt v. Reno*, 172 F.3d 978, 981 (7th Cir. 1999). "To satisfy the objective prong, [Awad] must have brought forth 'specific detailed facts' supporting the reasonableness of [her] fear of being singled out for persecution." *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001).

---

[8] The "well-founded fear of persecution" standard is used to determine eligibility for asylum instead of the "clear probability of persecution" standard, which is used to determine eligibility for the suspension of deportation. *INS v. Stevic*, 467 U.S. 407, 429 (1984). In regards to the clear probability standard the Supreme Court stated, "[w]e have deliberately avoided any attempt to state the governing standard beyond noting that it requires that an application be supported by evidence establishing that it is more likely than not that the alien would be subject to persecution . . . ." *Id.* at 429-30. However, because Awad did not ask the BIA to reconsider her suspension of deportation application in her motion to reconsider and remand, the clear probability standard is unhelpful in resolving the current dispute before this Court.

In contrast to the requirement that she demonstrate her fear with specific detailed facts, the entire substantive portion of Awad's motion contained only three vague sentences:

> If this motion were granted, Ms. Awad will pursue her application for asylum because if forced to return to Lebanon, Ms. Awad has a reasonable and well-founded fear that she would face persecution. Ms. Awad fears persecution because she is a Christian-Assyrian who would suffer persecution within Muslim controlled Lebanon. Additionally, women are targets of mistreatment in Lebanon, according to the Country Reports on Human Rights Practices for 1999.

With her motion, Awad submitted the State Department's report in which she referred. The BIA did not abuse its discretion when it refused to accept that the three vague sentences referred to above were sufficient to establish a prima facie case of Awad's eligibility for asylum. *See Bhatt*, 172 F.3d at 982 (affirming the BIA's conclusion that the petitioner's uncorroborated testimony that he was threatened and beaten by Hindu militants failed to establish his well-founded fear of persecution); *Johnson v. INS*, 962 F.2d 574, 577 (7th Cir. 1992) (finding the applicant's affidavit outlining his changed circumstances insufficient to merit reopening his case). Awad presented the BIA with no evidence to act upon, let alone evidence so compelling that no reasonable factfinder could fail to find her requisite fear of persecution. *Karapetian*, 162 F.3d at 936. Moreover, the State Department's report that Awad submitted is unhelpful to her case because it does not set forth specific detailed facts explaining why Awad is likely to be singled out for persecution. Rather, the report merely states that, in 1999, women in Lebanon were generally subjected to mistreatment. "It is well settled that general, oppressive conditions that affect the entire population of a country do not provide a basis for asylum." *Petrovic v. INS*, 198 F.3d 1034, 1037 (7th Cir. 2000); *accord*

*Bradvica v. INS*, 128 F.3d 1009, 1013 (7th Cir. 1997). This principle is broadly interpreted to disqualify, as a well-founded fear, persecution common to all members of a minority. *See Petrovic*, 198 F.3d at 1037-38 (holding that general conditions of persecution faced by all ethnic Serbians in Croatia do not alone establish petitioner's well-founded fear); *Bevc v. INS*, 47 F.3d 907, 910 (7th Cir. 1995) (holding that Serbia's campaign of ethnic cleansing against non-Serbians did not demonstrate that petitioner, a non-Serbian, would be singled out for persecution). Thus, we are convinced that the BIA did not abuse its discretion in dismissing Awad's motion to reopen her asylum proceedings.

Awad's final argument, that she was denied due process of law because her claim for asylum was never heard, is wholly devoid of merit. Awad presented only her application for the suspension of deportation to the IJ. Awad had ample opportunity to apply for asylum and, in fact, actually applied for asylum twice: once in August 1993 and again in May 1995. Awad's decision to withdraw her second application, after her marriage Nabil Azo, was a tactical choice. Awad made a similar tactical decision by not applying for asylum a third time when she moved to reopen her case in September 1996. Moreover, the BIA gave a reasoned opinion considering whether Awad had made a prima facie showing of her eligibility for asylum and concluded that she had not.[9] The fact that Awad's tactical choices ultimately turned out to be fruitless cannot be imputed on the INS as a denial of due process.

The BIA's decision is hereby AFFIRMED.

---

[9] 8 C.F.R. § 3.2(a), which governs motions to reopen or reconsider before the BIA, states in part that, "The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief."

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*