[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 21, 2006
THOMAS K. KAHN
CLERK

No. 06-11733
Non-Argument Calendar
_____

BIA No. A97-638-610

MYRNA COROMOTO OLIVO DE AVILES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____
**(December 21, 2006)**

Before TJOFLAT, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

Petitioner Myrna Coromoto Olivo de Aviles ("Olivo") petitions for review

of a final order of the Board of Immigration Appeals ("BIA"), which affirmed, without opinion, the decision of the Immigration Judge ("IJ") denying Olivo's claims for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). For the reasons discussed below, we DENY Olivo's petition.

## I. BACKGROUND

Olivo, a native and citizen of Venezuela, was admitted to the United States on 7 March 2003 as a non-immigrant visitor with authorization to remain in the United States until 6 September 2003. After she remained in the United States beyond that date, the former Immigration and Naturalization Service ("INS") issued a Notice to Appear ("NTA") to Olivo, charging that she was removable pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). Olivo appeared before the Immigration Court, admitted to all of the facts and allegations contained in the NTA, and conceded removability. She then filed an application seeking asylum and withholding of removal, as well as protection under CAT.

Olivo's claims for asylum and withholding of removal were based upon both her political opinions and her membership in a particular social group.[1] In the

---

[1] Olivo's written application only mentioned her political opinion as a basis for asylum or withholding of removal. At the removal hearing before the IJ, however, both Olivo and her counsel raised the additional prospect of asylum or withholding of removal based upon her

written addendum that accompanied her application, Olivo indicated that certain middle and upper class zones in Caracas, where she resided, suffered frequent abuse at the hands of a group known as the "Circulos Bolivarianos," or "Bolivarian Circles." Olivo stated that the Bolivarian Circles were "gangs on motorized vehicles, armed with automatic weapons," who repeatedly "abuse[d], both verbally and physically, all the citizens who, in some way, tr[ied] to express their rejection and disagreement with the government" of Hugo Chavez, the President of Venezuela. R at 157. Olivo asserted that because the Montalban region of Caracas– where Olivo resided– was "one of the biggest middle class zones in Caracas," the Bolivarian Circles frequently terrorized and intimidated citizens living in that area. Id.

Olivo's written application also recounted an incident involving her son, Carlos Gabriel Aviles, who served in the Venezuelan military from 1997 to 2003. According to her application, in August 2002 the citizens of Caracas organized a march to protest the policies of the Chavez government. She claimed that Carlos was ordered to use lethal force, if necessary, to prevent the citizens from marching. Olivo asserted that because Carlos refused to use any force against the citizens, he

---

membership in a particular social group, the Lady's Committee of the National Guard of Venezuela. Because the IJ considered both of these grounds in reaching a decision on Olivo's application, we will likewise construe her application as positing two separate bases for asylum or withholding of removal.

3

was targeted by the Chavez government as being disloyal; that he was "persecuted" by his military superiors; and that his military career suffered as a result. Id. at 158. Olivo stated that the situation was so dire that Carlos eventually resigned from the Venezuelan military. He sought, and was granted, asylum in the United States. Olivo indicated that she was seeking asylum so that she could be close to her son. In addition, Olivo noted that she had resided in the United States from 1976 to 1982, during her marriage to her first husband, and that consequently she had "adapted to the American culture and this country." Id.

At the removal hearing before the IJ, Olivo testified in support of her application. She first indicated that she had been a member of the Lady's Committee of the National Guard of Venezuela, although she went on to clarify that she stopped being a member of that group after she and her husband divorced twelve years earlier. Olivo did not state that she belonged to any other social organizations, nor did she indicate that she was particularly politically active. She testified that she was seeking asylum in the United States because she was afraid of both the Chavez government and the Bolivarian Circles. Olivo stated that the Bolivarian Circles "persecute[d] those people who [were] not in agreement with the present government," id. at 59, and that, because she lived in a middle class area where there was "great opposition" to the Chavez government, she had been labeled an "enem[y] of the regime," and had suffered oral insults and threatening

4

telephone calls. Id. at 60-62.

When questioned further, Olivo recounted being followed by motorcycle-riding members of the Bolivarian Circles, who shouted at her and attempted to scare her when she left her home. She described how a Bolivarian Circle member had crossed in front of her with his motorcycle while she was driving her car. She stated on cross-examination that this was the "the worst" attempt the Bolivarian Circles had made to cause her harm. Id. at 63. Olivo also testified that this persecution started in December 2001, and continued through early 2003. Olivo offered further testimony about the experience of her son, Carlos. She recounted the incident with his military superiors that caused him to be allegedly blacklisted by the Chavez government. She also testified that her family members suffered constant persecution at the hands of the Bolivarian Circles, all as a result of Carlos' actions.

In his oral decision, the IJ reviewed both the evidence presented in Olivo's application and her testimony. The IJ found Olivo's testimony to be fully credible, and found that the documentary evidence in the record buttressed her testimony. Despite her credibility, however, the IJ determined that there was "nothing in the record to show that [Olivo] suffered any serious harm." Id. at 33. He found that Olivo had complained of only "occasional and sporadic" telephone calls from the Bolivarian Circles, but intimated that this harm was not particularly severe. Id.

5

The IJ also failed to find any evidence that Olivo had suffered "physical or psychological trauma" as a result of the Bolivarian Circles' actions, other than ordinary harassment as a citizen. Id. at 34. He further found that the specific actions of the Bolivarian Circles of which Olivo complained– "driving around neighborhoods on motorcycles intimidating civilians"– were common in Venezuela. Id. at 33. The IJ therefore determined that Olivo's complaints pertained to "general conditions" that affected "the populace as a whole." Id. at 34.

Nor was the IJ convinced, even assuming Olivo had suffered harm, that she had shown such harm was connected to either her membership in a particular social group or to her political views. He observed, in a short colloquy with Olivo's counsel, that Olivo had failed to connect her membership in the pro-National Guard women's organization to her subsequent mistreatment by the Bolivarian Circles. He also found that Olivo had failed to show that her mistreatment was due to her own political opinions, or the imputed opinions of another. In discussing the experience of her son, Carlos, the IJ found that Olivo had failed to produce "any testimony at all to show why the political stance taken by her son would have been imputed to her." Id. The IJ stated that Olivo had failed to "tell [him] that anything happened to her as a result of what happened to her son." Id. at 65. Due to the lack of a clear connection between Carlos' conduct and the persecution of which she complained, the IJ concluded that there was

6

insufficient evidence to impute the political stance taken by Carlos to Olivo.

In light of these findings, the IJ concluded that Olivo had failed to show eligibility for asylum. In addition, the IJ found that Olivo had failed to show that she was entitled to withholding of removal under the INA, since she has not shown that it was more likely than not that she would suffer persecution if she returned to Venezuela. Finally, the IJ concluded that Olivo was not entitled to protection under CAT, since there was no evidence that Olivo had been tortured or would likely be subject to torture in the future. Accordingly, the IJ issued an order denying Olivo's application on all grounds, and ordering her removal pursuant to the NTA. The BIA affirmed the IJ's order, without comment. Olivo filed a timely petition for review with this court.

## II. DISCUSSION

A. Standard of Review

We review legal issues de novo, Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001), and "administrative fact findings under the highly deferential substantial evidence test," Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc) (citations omitted), cert. denied, 544 U.S. 1035, 125 S. Ct. 2245 (2005). Under that standard, we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir.

2001) (internal quotations and citation omitted). "To reverse a factual finding by the BIA, this Court must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y. Gen., 246 F.3d 1317, 1320 (11th Cir. 2001) (citation omitted). Indeed, "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi, 386 F.3d at 1027 (citation omitted). Rather, we will reverse a BIA's findings of fact "only if the evidence presented by the applicant is so powerful that a reasonable fact finder would have to conclude" otherwise. Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1323-24 (11th Cir. 2001).

We review only the BIA's decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar, 257 F.3d at 1284 (citation omitted). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. (Citation omitted). In Olivo's case, the BIA expressly adopted the IJ's decision, without further comment. Therefore, we will review the analysis set forth in the IJ's opinion as if it were the BIA's. See Al Najjar, 257 F.3d at 1284.

B. Asylum

Section 208 of the INA provides that "[a]ny alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum." INA § 208(a)(1), 8 U.S.C. § 1158(a)(1) (2002). "The Attorney General may grant

asylum to an alien . . . if the Attorney General determines that such alien is a

refugee within the meaning of section 101(a)(42)(A) of [the INA]."  INA §

208(b)(1), 8 U.S.C. § 1158(b)(1).  In turn, a "refugee" is defined in section 101 as

> any person who is outside any country of such person's
> nationality or, in the case of a person having no nationality, is
> outside any country in which such person last habitually
> resided, and who is unable or unwilling to return to, and is
> unable or unwilling to avail himself or herself of the protection
> of, that country because of persecution or a well-founded fear
> of persecution on account of race, religion, nationality,
> membership in a particular social group, or political opinion . . .
> .

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  The asylum applicant carries the

burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a).  To prove

asylum eligibility, "the alien must establish a 'well-founded fear' that his or her

political opinion (or other statutorily listed factor) will cause harm or suffering that

rises to the level of 'persecution.'"  D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814,

818 (11th Cir. 2004) (citation omitted).  A well-founded fear of persecution may be

established by showing either: "(1) past persecution on account of her political

opinion or any other protected ground; or (2) a 'well-founded fear' that her

political opinion or any other protected ground will cause future persecution."

Sepulveda v. U.S. Att'y. Gen., 402 F.3d 1236, 1230-31 (11th Cir. 2005) (per

curiam) (citing 8 C.F.R. § 208.13(a),(b)).

9

1. Past Persecution

"To establish asylum based on past persecution, the applicant must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (citing Sepulveda, 401 F.3d at 1230-31). As to the former, while the INA does not define the term "persecution," we have observed that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Id. at 1237 (citing Sepulveda, 401 F.3d at 1231) (alteration omitted). "Not all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000). Indeed, as our sister circuit has noted, it is a "hard truth that unpleasant and even dangerous conditions do not necessarily rise to the level of persecution." Bhatt v. Reno, 172 F.3d 978, 982 (7th Cir. 1999) (citation omitted).

Olivo contends that "[t]he record clearly shows that Olivo was persecuted by Venezuelan security and intelligence authorities as well as the Bolivarian Circles," Brief of the Petitioner at 29, but that assertion is belied by both the written and oral evidence submitted in connection with her application. Olivo testified that members of the Bolivarian Circles made threatening phone calls, insulted her in public and, in one instance, crossed in front of her car with a motorcycle while she was driving. She conceded on cross-examination, however, that the motorcycle incident was "the worst" attempt that the Bolivarian Circles ever made on her life.

10

R at 62-63. Olivo did not mention any physical harm, and, when she was pressed to recount what else had happened to her while she was in Venezuela, she referenced only insults and the threats from the Bolivarian Circle group.

The IJ found that Olivo had failed to show severe harm sufficient meet the threshold showing of past persecution. We agree. In fact, we previously have found that written threats and threatening telephone calls – similar to the ones borne by Olivo in this case – constituted mere harassment rather than persecution. See Silva, 448 F.3d at 1237-38. See also Sepulveda, 401 F.3d at 1231 (stating that "menacing telephone calls and threats . . . do not rise to the level of past persecution that would compel reversal of the IJ's decision").

Moreover, even if we were to find that the harm Olivo suffered in Venezuela rose to the level of past persecution, she still failed show that the persecution was carried out because of a statutorily protected ground. See Mazariegos, 241 F.3d at 1323 ("[A]n alien must do more than merely show that he was physically harmed or that his civil or human rights were violated; he must provide evidence that he was mistreated because of his political opinion, or one of the other grounds, rather than for some other reason."). Olivo failed to show a causal connection between her claimed persecution and her political opinion or her membership in a social group. While Olivo stated that she belonged to a group of Venezuelan citizens who were "not in agreement with the present government," R at 59, she failed to

11

show any causal connection between her anti-Chavez opinions and the treatment she received from the Bolivarian Circles. Furthermore, while she cited her membership in the Lady's Committee of the National Guard, she never once posited that she had been mistreated because of her membership in that group. In fact, she conceded that she had ceased participating in the group approximately twelve years earlier. At the removal hearing, Olivo's counsel attempted to broadly characterize her social group as being the mother of a military member, but Olivo likewise failed to establish that she was mistreated as a result that status; on the contrary, she testified that the harassment at the hands of the Bolivarian Circles commenced in 2001, well before her son's run-in with his military superiors. If anything, the record suggests that the Bolivarian Circles taunted and harassed Olivo because she happened to live in an urban, middle class neighborhood in Caracas where the gang tended to congregate its efforts to harass citizens. But there was no showing that Olivo suffered any particularized mistreatment due to her political views or membership in a social group. In light of these facts, the IJ concluded that Olivo's complaints were based upon general conditions that more or less affected all of the residents of her neighborhood, Montalban. There was substantial evidence to support such a conclusion, and we are not compelled to reach a different result.

2.  Well-Founded Fear of Future Persecution

Substantial evidence also supports the IJ's finding that Olivo failed to demonstrate a well-founded fear of future persecution.  To demonstrate a well-founded fear of future persecution, an applicant must show: (1) a "subjectively genuine and objectively reasonable" fear of persecution; (2) based upon a statutorily protected ground.  Silva, 448 F.3d at 1236 (internal citations omitted).  Olivo's application falls short on both of these grounds.

As to the first, we have held that the well-founded fear has both subjective and objective components.  "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution."  Al Najjar, 257 F.3d at 1289 (citation omitted).  The objective prong, however, requires that the applicant's fear be "objectively reasonable."  Id. (citations omitted).  The applicant is required to present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution."  Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (citation and internal quotations omitted).

Here, the subjective component of the well-founded fear inquiry clearly has been satisfied by Olivo's testimony that she genuinely fears persecution.  The IJ

found her testimony to be credible,[2] and we do not doubt the genuineness of her fear of future mistreatment by the Bolivarian Circles. Olivo, however, failed to present evidence to show that her fear of future persecution was objectively reasonable, or that there was a "good reason to fear that she would be singled out for persecution." See Forgue, 401 F.3d at at 1286. While Olivo contends on appeal that "President Chavez has resolved to eliminate all opposition to his regime through government security organs and the Bolivarian Circles," Brief of the Petitioner at 32, the evidence does not compel the conclusion that she would be singled out as a specific target of persecution. As in Sepulveda, the evidence Olivo presented "does not indicate her notoriety" as an opponent of the Chavez regime. 401 F.3d at 1232. Rather, substantial evidence supports the conclusion that her fear is general, rather than individualized, and is based on conditions that affect a much larger subset of the population. As we previously have held, the INA "does not extend eligibility to asylum to anyone who fears the general danger that inevitably accompanies political ferment and strife." Mazariegos, 214 F.3d at 1328 (quoting Huaman-Cornelio v. BIA, 979 F.2d 995, 1000 (4th Cir. 1992)).

---

[2] Olivo has suggested in her arguments that the IJ erred because he found her testimony to be fully credible, but then went on to conclude that she had failed to present adequate evidence to warrant a grant of asylum. There is nothing inconsistent, however, about finding an asylum applicant to be fully credible, but nevertheless denying her application due to a paucity of evidence. See, e.g., Silva, 448 F.3d at 1240 (affirming a denial of asylum despite the fact that the applicant's testimony was deemed to be credible); Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1007 (11th Cir. 2005) (per curiam) (same).

14

Furthermore, even assuming Olivo had established a well-founded fear, substantial evidence supports the finding that Olivo's application failed on the second prong of the analysis, that is, the requirement that the well-founded fear of persecution be based upon a statutorily protected ground. As discussed previously, Olivo failed to show any causal connection between her fear of future persecution and her own political opinions or her membership in a particular social group. To circumvent this requirement, Olivo attempts to argue on appeal that the political opinions of her son Carlos have been imputed to her by the Bolivarian Circles, such that the sins of Carlos will likely be visited upon her in the event she returns to Venezuela.

We previously have recognized that "an imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a well-founded fear of political persecution within the meaning of the INA." Al Najjar, 257 F.3d at 1289 (citations and alteration omitted). But even if a political opinion is imputed to the asylum applicant, the applicant is still required to show that he or she has a fear of future persecution because of that imputed political opinion. Al Najjar, 257 F.3d at 1289. Even if we were to attribute Carlos' political stance to Olivo, Olivo would still have the burden of showing that the harassment she will likely receive from the Bolivarian Circles would be based on Carlos' political views. This she has failed to do; as discussed previously, not only did her mistreatment at the hands

15

of the Bolivarian Circles commence before Carlos' act of defiance, but her fear of future harm has more to do with the fact that she lives in an upper middle class neighborhood and less with the fact that Carlos' anti-Chavez views have been attributed to her. The IJ observed that the Bolivarian Circles' actions "affect[ed] everyone in the middle class neighborhood," and that there was no showing that they were "after her because her son refused to follow [an] order." R at 67. Substantial evidence supports that finding. Thus, we conclude that Olivo failed to show that Carlos' political opinions would likely be imputed to her.

C. Withholding of Removal

Substantial evidence also supports the IJ's finding that Olivo failed to quality for withholding of removal under the INA. "An applicant for withholding of deportation must show a 'clear probability of persecution,' or that he will more likely than not be persecuted if deported." Nkacoang v. INS, 83 F.3d 353, 355 (11th Cir. 1996) (citing INS v. Stevic, 467 U.S. 407, 413, 104 S. Ct. 2489, 2492 (1984)). This is a more stringent standard than the "well-founded fear" standard required for asylum eligibility. Al Najjar, 257 F.3d at 1292-93. Thus, "[i]f an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation." Nkacoang, 83 F.3d at 355 (citation omitted). Because Olivo failed to demonstrate a well-founded fear of persecution sufficient to support an asylum

16

claim, the IJ properly found that she was unable to satisfy the greater burden attending a request for withholding of removal.

D. Protection Under CAT

In making out a claim under CAT, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). In turn, "torture" is defined as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F. R. § 208.18(a)(1). Relief under CAT includes the mandatory remedy of withholding of removal. See 8 C.F.R. § 208.16(c)(4).

Olivo has not submitted any evidence that she suffered, or is likely to suffer, "severe pain or suffering" rising to the level of torture. See 8 C.F.R. § 208.18(a)(1). Although the addendum to her application references extrajudicial killings, kidnappings, and torture undertaken with the implicit support of the Chavez government, the majority of these alleged incidents, while loathsome, involved acts against political dissidents, opposition party members, and anti-

17

Chavez demonstrators. Olivo failed to show how similar mistreatment was "more likely than not" to befall her. See 8 C.F.R. § 208.16(c)(2). Indeed, as previously discussed, there was hardly any evidence presented to show why she would be singled out for harm by the Chavez government. Accordingly, substantial evidence supports the IJ's denial of Olivo's application for protection under CAT.

## III. CONCLUSION

Olivo has petitioned this court for a review of the IJ's order denying her applications for asylum and withholding of removal under the INA and denying her petition for protection under CAT. Substantial evidence supports the IJ's conclusion that Olivo did not suffer past persecution on the basis of a statutorily protected ground. Nor does Olivo have a "well-founded fear of future persecution" as our precedents have interpreted that standard. Substantial evidence further supports the IJ's decision that Olivo failed to show that it is more likely than not that she will be persecuted in the future, or that it is more likely than not that she will be tortured if she is removed to Venezuela. Accordingly, the IJ did not err in denying Olivo's application. **PETITION DENIED.**